[Crim. No. 354.   Third Appellate District.—November 21, 1916.]

## THE PEOPLE, Respondent, v. E. J. KNOX, Appellant.

CRIMINAL LAW—SALE OF AUTOMOBILE—EVIDENCE—LAWFUL POSSESSION —UNSUPPORTED CONVICTION OF GRAND LARCENY.—Under an information charging a defendant in one count with the crime of embezzlement in fraudulently converting to his own use an automobile, and in a second count with the crime of grand larceny in feloniously stealing and carrying away the automobile, a verdict finding him guilty of grand larceny is without support, where the evidence discloses that the defendant had lawful possession of the machine at the time that he unlawfully disposed of the same.

ID.—ESSENTIALS OF EMBEZZLEMENT.—The essential gist of the crime of embezzlement is in the breach of trust reposed in the agent, employee, or bailee, by his principal, employer, or bailor, and, therefore, the charge of embezzlement always presupposes the lawful acquisition by the agent, employee, or bailee of the possession ,of the property which has been misappropriated or wrongfully converted to the use of such agent, employee, or bailee.

ID. — "GRAND LARCENY" AND "EMBEZZLEMENT" DISTINGUISHED. — The essential distinction between the crime of "embezzlement" and that of "grand larceny" is that in embezzlement the original taking of the property is lawful, while in grand larceny the original taking involves a trespass or is accompanied by a felonious intent to deprive the owner of the property so taken.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial. R. H. Latimer, Judge presiding.

The facts are stated in the opinion of the court.

E. S. Bell, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant, having been convicted of the crime of grand larceny, appeals from the judgment and the order denying his motion for a new trial.

The information filed against the accused is in two counts, the first charging the crime of embezzlement in that he fraudulently converted to his own use an automobile, known

as a ".Krit roadster," the alleged property of one H. J. Beal, and in the second that he committed the crime of grand larceny in that he feloniously stole and carried away said automobile.

The point first called to our attention is that both counts of the information charge identically the same offense, viz., embezzlement, and that there is, therefore, no groundwork for the support of the verdict. This point, however, does not require consideration here, inasmuch as we have arrived at the conclusion that the evidence, as it is presented before us, shows that, if the defendant is guilty of any crime at all growing out of the transaction upon which this action against him is founded, it is that of embezzlement and not grand larceny.

Stating them as they were given at the trial by the prosecuting witness himself (H. J. Beal), the facts are substantially as follows: The transaction from which this prosecution arose was had between said H. J. Beal and the defendant on the twenty-ninth day of April, 1914. For a period of some four or five months prior to that time the parties named had been intimate acquaintances, both being members of the Methodist Church in the city of Napa. Beal was then engaged in the business of buying and selling real estate, and Knox was a dealer in automobiles, maintaining, in an alley or a small street in the rear of the Napa Hotel, a garage of rather limited capacity and used mainly for the storing of automobiles.

On the morning of the twenty-ninth day of April, 1914, the defendant called at the residence of Beal. The latter had just finished his morning meal when his doorbell rang. Upon opening the door Beal saw the defendant, who stated that he had called for the purpose of securing from Beal, if he could, a loan of the sum of $475. Knox stated to Beal that he was about to obtain the agency in Napa of the Maxwell automobile, and that the company required, before vesting him with the powers of such agency, that he should deposit with it a sum of money as evidence "of good faith"; that the amount he needed for that purpose would be the sum of $475; that he would be able to return the money within a few days. Beal replied that while he had no money to let out, nevertheless, he was in a position and inclined to accommodate the defendant, and asked the latter what security he could

give for the loan. Knox said that he could and would execute and deliver to Beal his promissory note for the amount, and as security therefor would execute and deliver to Beal a bill of sale of two automobiles owned by him—one a Maxwell and the other a "Krit" roadster. This proposition was satisfactory to Beal, who thereupon drew his check on the Bank of Napa for the sum of $475 in favor of Knox and delivered the same to the latter. Knox then delivered to Beal his promissory note for the sum mentioned, and at the same time delivered to him the bill of sale of the two cars above described. Beal did not take possession of the machines so pledged to him, but left them in the garage of the defendant, where they were at the time of the transaction mentioned. But it appears that either later on the same day upon which the loan in question was made, or the day following, Beal had heard that the defendant had not used the money borrowed by the accused for the specific purpose for which he represented to Beal that he wanted it, and thereupon and immediately called at the home of the defendant and there, in the presence of the wife of the accused, told the latter what he had heard concerning the disposition that he (the defendant) had made of the money. Knox admitted to Beal that, in the place of putting the money up as deposit to secure the agency of the Maxwell company, he had used it in paying off a balance or an amount due on the Maxwell car which, with the Krit roadster, he had pledged to Beal. The latter then declared that he did not approve of the conduct of the accused in so misrepresenting to him the use to which he intended to apply the money, and that he (Beal) desired, therefore, to take possession of the pledged property. Knox assented to this proposition, and thereupon the two men immediately proceeded to the garage or storeroom in which the two cars were kept, and on reaching the garage, Beal said that he would, if agreeable to Knox, rent one corner of said storeroom in which he would store the machines, and asked Knox what rental he desired or would charge. The latter replied that, inasmuch as they were still personal friends, he would charge Beal nothing for the room occupied by the cars. Beal, however, said that he desired to pay for the use of the room, and thereupon it was agreed that he should and would pay therefor the sum of $2.50 per month. The two men then moved the cars to a particular corner in the garage.

There they remained undisturbed for some three or four weeks, when Beal, after several other previous visits to the garage and finding the cars in the corner in which he and Knox had placed them, called at the garage and observed that the Maxwell car had been removed to a shed near and on the outside of the garage. Knox was at the garage at this time, and Beal asked him "what the Maxwell was doing under the shed," to which the defendant replied that he had sold it. "I asked him by what authority he removed it out of the barn," Beal continued to testify, "and he laughed and said: 'Beal, you don't care anything for either of these automobiles, for that matter; you have a good machine, and it is your money you want'; and he further told me that he had sold it to some party formerly—oh, I don't know—but that he had taken a mortgage on a house and lot in Vallejo as security for the Maxwell—he had sold it for $400." Beal further testified that nothing more was said or occurred by or between them on that occasion.

A few days after the conversation above recited—Beal fixed it at approximately a week from said time—the latter again visited the garage, and there met Knox and the party to whom the defendant had sold the Maxwell car. Beal testified that he passed "the time of day" with the party to whom Knox had sold the Maxwell, and that further than that nothing was at that time done or said. Beal further testified that within about thirty days from the time that the defendant told him of selling the Maxwell, the accused paid him (Beal) the sum of one hundred dollars on the note referred to above.

In the month of October, 1914, the defendant (so it appears from Beal's testimony) moved his garage from the "barn" (Beal sometimes referred to it as a "barn") in the rear of the Napa Hotel to a small storeroom or building on Main Street, between Pearl and First Streets, in said city of Napa, where it remained for several months. Early in February, 1915, Beal missed the Krit roadster from the garage or storeroom of Knox. Shortly thereafter, Beal and Knox met at an automobile house in San Francisco. Beal on that occasion asked Knox what he had done with the Krit roadster, and in reply Knox stated that he had stored the machine in San Francisco, and that his purpose in taking it there was to sell it. Considerable talk went on between

them about the Krit, Beal saying that Knox had no right to move the machine from Napa, and no right or authority to sell it. Knox said that "I cared nothing at all for the machine, but it was the money I was after, that I wanted, and I told him that that worked one time, but it would not work twice."

It was shown by the witness, Covington, that he sold the Krit roadster to a party in San Francisco.

The above constitutes an accurate synoptical statement of the facts as testified to by Beal, the prosecuting witness, and it was undoubtedly upon his testimony that the jury founded their verdict, inasmuch as the record discloses no other testimony addressed to the question as to the possession of the pledged property or to the several transactions occurring between Beal and Knox relative to the said property.

Although brought out by the defense, there is another circumstance, the verity of which was, in a measure, admitted by the district attorney who prosecuted this case, and to which, therefore, we may properly advert, and it is, that during a portion of the year 1914, and after it had been pledged to Beal, the Krit machine was in the possession of Messrs. Bush & Haus, the owners of another garage in the city of Napa. Bush testified that Knox brought the Krit to his garage to have some repair work done on it, and that he said to Bush that, if he would make the repairs, he could, himself, use the machine whenever he desired to do so. On one occasion, Bush & Haus let it out to the district attorney, who was then making his canvass over Napa County for election to the office of district attorney. That official admitted at the trial that he hired the Krit from Bush & Haus at the time and for the purpose mentioned.

It is to our minds an unquestionable proposition that the facts as proved and above stated clearly disclose that, if the defendant is guilty of any crime growing out of the transaction between him and Beal, it is that of embezzlement.

The essential gist of the crime of embezzlement is in the breach of trust reposed in the agent, employee, or bailee, by his principal, employer, or bailor, and, therefore, the charge of embezzlement always presupposes the lawful acquisition by the agent, employee, or bailee of the possession of the property which has been misappropriated or wrongfully converted to the use of such agent, employee, or bailee. The essential distinction, then, between the crime of embezzlement and that

of grand larceny is that, in embezzlement, the original taking
of the property is lawful, while in grand larceny the original
taking involves a trespass or is accompanied by a felonious
intent to deprive the owner of the property so taken. In
other words, ''in the case of grand larceny, the taking must
be with a felonious intent; but in embezzlement the original
taking is lawful, and the crime consists in the fraudulent
appropriation of property by a person to whom it has been
intrusted." (*People* v. *Dye,* 29 Cal. App. 169, 179, [154 Pac.
875]; *People* v. *Howard,* 31 Cal. App. 358 [160 Pac. 697];
*People* v. *Tomlinson,* 102 Cal. 19, [36 Pac. 506].)

Of course, when a person obtains property from the owner
thereof with the latter's apparent consent, but so obtains it
with the intention of stealing it, and carries out that intent,
he is guilty of larceny; but this record affords absolutely no
ground for the inference that the defendant obtained posses-
sion of the machines with the intent to steal them.

The facts of this case, however, as we have detailed them
herein, plainly speak for themselves, and, therefore, require
no analytical examination to demonstrate that the one essen-
tial element of larceny, namely, the asportation or felonious
taking of the property in the first instance is clearly wanting.
It is, however, vigorously argued that, while originally the
pledged property was permitted by Beal to remain in the
possession of the defendant, the property was subsequently
taken from his possession by the act of Beal in ''renting,'' for
a stipulated monthly rental, a small portion or corner of the
garage in which they had always been kept, and removing the
machines to the corner so rented for storage. We are unable
to view the situation as the record here presents it in that
light. We cannot see how it can truly be said that Knox
was any the less intrusted with the machines after they were
removed to a particular corner of the garage of which he
had exclusive control than he was before they were so re-
moved. He had used and was using the building or garage
at the time of his transaction with Beal as a room in which
to store automobiles. That he had the possession of the build-
ing at all times, is not questioned. Necessarily, therefore,
he had possession of its contents, whatever they were or
by whomsoever they were owned, and was responsible for
the safekeeping of all property deposited or left therein
for that purpose. The fact that in the first instance he was

a mere gratuitous or voluntary bailee, and subsequently became a bailee for hire, cannot, of course, change the situation. He still held the property in trust for Beal. Let it be supposed, as a matter of illustration, that Beal, after receiving the bill of sale from Knox, had taken actual possession of the machines, and had removed and placed them for safekeeping or storage in the garage of Bush & Haus, agreeing to pay the latter for the service so rendered a certain monthly rental, and that Bush & Haus had, without authority, sold the machines and pocketed the proceeds of the sale. In such case, would it be doubted for a moment that Bush & Haus had thus obtained lawful possession of the machines, and so would be guilty of embezzlement and not of grand larceny? The case presented against the defendant here is no different in any particular from the supposititious case above stated.

That the defendant not only openly exercised possessory dominion over the pledged property, but even exercised acts of unqualified ownership of a part thereof, and this with the knowledge and tacit consent of Beal, is indisputably shown by the proofs. He removed the Maxwell machine from the garage to a shed situated near the garage, where it was seen by Beal, who was told by the defendant that he (the defendant) had sold it. Beal made no serious protest against this act of the defendant; he merely asked the accused by what authority he had removed the Maxwell to the shed and sold it. Beal subsequently saw the purchaser of the machine at the defendant's garage. He merely "passed the time of day with him," but said nothing about his interest in the Maxwell, nor did he then question the defendant's right to sell it. However, the decision of the case must, obviously, rest entirely upon the solution of the question whether the defendant, at the time he disposed of the pledged property, did or did not have lawful possession of the said property. We repeat that, to our minds, there is no escape from the conclusion that the evidence unquestionably shows that he did have such possession, and that, consequently, the verdict adjudging him guilty of grand larceny is wholly without support.

The judgment and the order appealed from are, accordingly, reversed.

Chipman, P. J., and Burnett, J., concurred.