[Civ. No. 4243.  Second Appellate District, Division One.—October 3,
1924.]

RALPH SIMONS, Appellant, v. HILL STREET FIRE-
PROOF BUILDING COMPANY (a Corporation), Re-
spondent.

LOUIS KOHAN, Appellant, v. HILL STREET FIRE-
PROOF BUILDING COMPANY (a Corporation), Re-
spondent.

[1]  SALES—DELIVERY OF POSSESSION—PRESENT TRANSFER OF TITLE.
In this action to recover damages for the alleged conversion of
certain personal property of which plaintiff claimed to be the
owner and entitled to the possession thereof, being a part of the
materials of a building being razed by certain persons under a
contract with defendant, as nothing remained to be done by de-
fendant to prepare the materials (which were completed, described
and identified) for delivery to said persons, and it was the latter

---

1. Validity of conditional sale contracts as affected by express or
implied permission to purchaser to sell in the ordinary course of
business, note, L. R. A. 1917B, 658. See, also, 23 R. C. L. 1346.

who were permitted and who agreed to take immediate possession of the property and remove it from the premises where it was at the time, said contract was one of actual and complete sale whereby title to the described materials passed to said persons.

[2] ID.—DISPOSITION OF PROCEEDS UPON RESALE—PERSONAL COVENANTS.—The agreement between defendant and said persons having been an executed contract whereby title to said personal property passed to the latter, the provision in said contract that sixty per cent of the proceeds upon the resale of any of the property should be paid to defendant, to apply on the purchase price of the property, did not constitute a covenant running with the property, but merely constituted a right which defendant might assert against said persons, and not against the property or purchasers thereof upon resale.

[3] ID.—SELLER'S LIEN—LOSS OF POSSESSION—SUBSEQUENT ACQUISITION.—The lien of defendant, as seller, upon said personal property was lost when he surrendered possession thereof to the purchaser, without any agreement that such surrender would not extinguish the lien, and such lien was not revived by the default of the purchaser and the resumption of possession by defendant.

(1) 35 Cyc., p. 296 (Anno.), p. 303.    (2) 35 Cyc., p. 343.    (3) 35 Cyc., p. 491.

APPEAL from a judgment of the Superior Court of Los Angeles County. Thos. O. Toland, Judge. Reversed.

The facts are stated in the opinion of the court.

Hahn & Hahn and Neice & Packard for Appellants.

James, Pace & Smith for Respondent.

CONREY, P. J.—In all matters essential to the decision these two cases are alike. For that reason we shall discuss the first case, and the decision there will determine the other case.

The plaintiff Simons brought his action to recover damages for the alleged conversion by the defendant of certain personal property of which the plaintiff claimed to be the owner and entitled to the possession thereof. Judgment was entered in favor of the defendant. The plaintiff appeals therefrom.

2. See 24 R. C. L. 128.

3. Lien of vendor of personalty, note, 83 Am. St. Rep. 451. See, also, 24 R. C. L. 127.

On or about the thirtieth day of November, 1919, defendant was the owner of a church building commonly known as the First Methodist Episcopal Church building, on the northeast corner of Sixth and Hill Streets, in the city of Los Angeles. On that day the defendant, as the seller, and Will W. Beach and J. P. Morgan, as the purchasers, entered into a contract in writing which provided that the purchasers should raze and tear down the walls and floors of said building, and remove the materials thereof from the premises. It was provided in the contract that "the purchasers shall have and the seller does hereby transfer to the purchasers all its right, title and interest in and to the materials composing said structure," with exceptions not material to this case. If the purchasers did not use due diligence in prosecuting the work, the seller was authorized to cause the materials to be removed, "and the expense thereof shall be paid to the seller by the purchaser upon demand therefor. . . . The purchasers agree to pay to the seller for said materials transferred to the purchasers under the terms hereof the sum of $17,500, on or before 120 days from the said 1st day of December, 1919. . . . The purchasers are not in any sense the agents or employees of the seller in this transaction but have purchased the materials composing said building and have agreed to remove the same from the said premises as hereinbefore described. . . . The seller reserves title to the east, south and west walls below the normal level of the lots adjoining said church property on the north. . . . It is hereby agreed that W. E. Pedley of Riverside, California, is hereby appointed as the agent of the purchasers, and there is hereby vested in the said agent the sole and complete authority for said purchasers, to sell or dispose of the materials obtained from the razing and tearing down of said structure. That there is hereby transferred and assigned to the seller sixty per cent of any and all moneys received or obtained from the sale of the materials or things obtained in the razing and tearing down of said structure, not, however, in excess of the sum of $17,500, and the said agent is hereby authorized and instructed to pay to the seller said sixty per cent of all moneys obtained from the sale of any and all such materials, or things, until there has been paid to the said seller the said sum of $17,500.00. No sales shall be made

other than for cash upon delivery. Said assignment shall be void and of no effect upon the payment to the seller of the sum of seventeen thousand dollars ($17,000), on or before December 8th, 1919, or upon the payment to the seller of the sum of seventeen thousand five hundred dollars ($17,500.00) within 120 days from December 1st, 1919.

"It is hereby agreed that the said W. E. Pedley hereby assumes and agrees to carry out the terms of this agreement, provided, however, that his liability for the payment of the sums to be paid to the seller shall not exceed the total sale price of the materials or things obtained from the razing or tearing down of the said structure. The seller shall appoint a representative to act for it in connection with the razing and tearing down of said structure, and no sale of any of the materials or things obtained in the razing or tearing down of said structure shall be made without the approval of the seller or its representative. At the time of making each and every sale of any of the materials or things obtained in the razing of said structure, the agent shall furnish to the seller a statement showing the materials sold, amount obtained therefor, and the portion thereof due to the seller, to-wit: sixty per cent. of said sale price, and shall pay to the seller therewith, the said sum to which it is so entitled."

Thereafter Beach and Morgan sold and transferred their contract and all their rights as purchasers of said property to F. B. Mathews. While Mathews was prosecuting the work of tearing down said building he, as party of the first part, entered into a written contract of date January 17, 1920, with plaintiff Simons, which contract contained, among other things, the following terms: "It is agreed that the second party hereby purchases from said first party, and the first party hereby sells and agrees to deliver, as hereafter specified, all of the bricks, both common and face bricks, in and about said building constituting the exterior walls, towers, etc., above said ground level, at a price of four ($4.00) dollars per thousand, free and clear of all encumbrances when delivered." As a part of the consideration and purchase price, the purchaser agreed to take and remove from the premises the said bricks "from the position and in the condition as they shall be and remain after the

first party has razed or tumbled said walls and structure to the ground or basement. . . . That as good faith the second party has simultaneously with the execution of this agreement paid unto the first party the sum of fifteen hundred ($1,500.00) dollars, as a deposit by way of security for the faithful and complete performance of the purchase and removal of said materials, and which said fifteen hundred ($1,500.00) dollars shall be applied by the first party to the purchase of the last of said bricks so sold to and taken away from said premises by the second party, and not before.''

All bricks sold to the plaintiff were delivered to him and paid for as delivered except that the plaintiff did not receive that part of the bricks which at the specified rate per thousand would be paid for by said deposit of $1,500 when applied to the purchase price. After the work of razing the building had been prosecuted for some time by Mathews, the said Mathews ceased to work thereon and the work was assumed and taken over by Pedley, under an agreement between respondent and Mathews whereby it was agreed that Pedley should approve of further sales, and make the collections, and pay daily sixty per cent of the proceeds to respondent, as provided under the terms of the Beach and Morgan contract. While the work was thus proceeding plaintiff demanded delivery of the remainder of said bricks which he had purchased, and that the said sum of $1,500 paid by him to Mathews be considered as the purchase price therefor. This demand was denied, and respondent actually prevented delivery of any more bricks to appellant, although at the same time delivery of the remainder of the bricks was tendered upon condition that cash be paid therefor upon delivery. The plaintiff having declined to accept the same upon such conditions, brought this action.

Appellant contends that the original contract between respondent, as vendor, and Beach and Morgan, as purchasers, was an executed contract of sale under which all title to the materials of the building to be razed passed to Beach and Morgan, and through them to their assignee, Mathews, and through him to appellant under his contract of purchase, which was likewise an executed and not executory contract of sale; and that appellant was not bound to see to the application of sixty per cent of the money he paid

for materials as provided for in the Beach and Morgan contract, even though he had notice of such provision in said contract. If these propositions are sustained, the conclusion will follow that appellant was entitled to have delivered to him the full amount of the brick for which in fact he had made full payment.

[1] "The title to personal property, sold or exchanged, passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, whether it is separated from other things or not." (Civ. Code, sec. 1140.) The language of the Beach and Morgan contract imports a present sale. The property sold was completely identified. It must be conceded that sometimes contracts relating to transactions of sale are construed to be only agreements to sell and not actual transfers, notwithstanding that the property is definitely described and words ordinarily importing a present sale and transfer are used. This is illustrated in the case of *Walti* v. *Gaba,* 160 Cal. 324 [116 Pac. 963]. There was a contract for the sale of all of the vendor's "spring wool clip of 1906" and also "the fall clip of 1905." At the time of making the contract, the fall clip was in storage. Nothing remained to be done to it by the vendor other than the weighing and delivery. But at that time the spring wool was growing on the bodies of the sheep running on the ranch of the vendor. A few days after the making of this contract the stored wool was destroyed at San Francisco in the great conflagration of April 16, 1906. The vendor sued the purchasers for the entire contract price of all the wool covered by the contract. If the transaction was an absolute sale and title had passed to all of the wool involved, at the time the contract was executed, defendants would have had to bear the loss and pay the full purchase price. But the court held that the transaction constituted an agreement to sell and to buy only, and that no title passed or would pass until the delivery of the wool. The fact that the contract was entire and not several, and that much remained to be done by the vendor before delivery of the spring wool, was held to be an important circumstance bearing upon the interpretation of the contract. A number of the principal cases sustain-

ing the decision are therein cited and need not be further mentioned here.

But it appears to us that the Beach and Morgan contract was one of actual and complete sale whereby the title to the described materials passed to the purchasers. Nothing remained to be done by the vendor to prepare the materials for delivery to the purchasers. On the contrary, it was the purchasers who were permitted and who agreed to take immediate possession of the property and remove it from the premises where it was at that time. (*Bill* v. *Fuller,* 146 Cal. 50 [79 Pac. 592]; *Gianelli* v. *Globe Grain & Milling Co.,* 48 Cal. App. 103 [191 Pac. 720]; *Todd* v. *Lyon,* 55 Cal. App. 67 [202 Pac. 899]; *Reed* v. *McDonald,* 22 Cal. App. 701 [136 Pac. 506]; *Fiddyment* v. *Johnson,* 18 Cal. App. 339 [123 Pac. 342]; *Lund* v. *Ganahl,* 22 Cal. App. 103 [133 Pac. 501].)

[2] The materials in question being thus owned and possessed by Mathews, as assignee of Beach and Morgan, Mathews had authority to sell the same, and that authority was completely unhampered so far as third party purchasers were concerned. Assuming that as between respondent and Mathews, respondent was entitled to receive sixty per cent of the $1,500 as soon as it was paid by appellant, that right could be asserted only as between the parties interested in the original contract. The agreement providing for payment to respondent of sixty per cent of the proceeds of a resale of any part of the property described and sold by virtue of the first contract, was not a covenant running with the property, however the rule might have been if the subject matter of the contract had been real property. Referring to a similar contention arising out of a resale by the purchaser of personal property, the supreme court of Massachusetts said that if a vendee sells in violation of his contract with the vendor, the latter has a remedy against such purchaser to recover his damages. "This right is founded on the personal contract alone, and it can be enforced only against the contracting party. To say that this contract is attached to the property, and follows it through successive sales which severally pass title, is a very different proposition. We know of no authority, nor of any sound principle, which will justify us in so holding."

(*Garst* v. *Hall & Lyon Co.*, 179 Mass. 558 [55 L. R. A. 631, 637, 61 N. E. 219].)

Respondent does not deny the rule as last above stated, but dismisses the point with the suggestion that the argument "is academic and without application here." This would be so if we could agree to respondent's contention that respondent by its contract had not divested itself of title to the property in question.

[3] Counsel for respondent suggest that even if the Beach and Morgan contract constituted a complete sale, and title to the materials in the building passed at the time to the purchasers and through them to their assignee, Mathews, nevertheless respondent as the seller, having peaceably resumed possession of the property upon the default of Mathews, was entitled to assert a seller's lien thereon. Reliance is placed upon *Eads* v. *Kessler*, 121 Cal. 244 [53 Pac. 656], and upon section 3049 of the Civil Code, which reads as follows: "One who sells personal property has a special lien thereon, dependent on possession, for its price, if it is in his possession when the price becomes payable, and may enforce his lien in like manner as if the property was pledged to him for the price." But section 2913 of the Civil Code also provides: "The voluntary restoration of property to its owner by the holder of a lien thereon dependent upon possession extinguishes the lien as to such property, unless otherwise agreed by the parties, and extinguishes it, notwithstanding any such agreement, as to creditors of the owner and persons, subsequently acquiring a title to the property, or a lien thereon, in good faith, and for value." Where a lien is dependent upon possession, such lien having been lost by surrender of possession, cannot be revived by any subsequently acquired possession. (19 Am. & Eng. Ency. of Law, 2d ed., p. 28, and cases there cited.) In this case there is no evidence of any agreement that respondent's surrender of possession did not extinguish the lien.

The judgments are reversed.

Houser, J., and Curtis, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 1, 1924.

All the Justices concurred.