[Civ. No. 2957.   Third Appellate District.—November 27, 1925.]

H. H. DAVIS, Appellant, v. CHAS. C. YOUNG et al., Respondents.

[1] LIENS — REPAIR OF AUTOMOBILE TRUCK — REDELIVERY TO CONDITIONAL VENDEE—REPOSSESSION BY VENDOR.—Section 2913 of the Civil Code, which provides that the voluntary restoration of property to its "owner" by the holder of a lien thereon dependent upon possession extinguishes the lien, "unless otherwise agreed by the parties," has no application whatever where a garage having a lien upon an automobile truck for repairs made at the instance of the purchaser of the truck under a conditional sale contract reserving title in the vendor, redelivers the truck to said purchaser, under an agreement to return same if the repair bill is not paid, and while the truck is in his possession it is repossessed by the vendor because of noncompliance with the contract to purchase.

[2] ID.—REPOSSESSION OF TRUCK—REVIVAL OF LIEN.—The lien of the garage on said automobile truck having been lost by the restoration of the truck to said purchaser under the conditional sale agreement, and the truck thereafter having been repossessed by the vendor because of noncompliance with the contract of purchase, the lien was not revived by the subsequently reacquired repossession of the truck by the garage.

---

(1) 28 Cyc., p. 43, n. 75 New.   (2) 28 Cyc., p. 43, n. 75.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Reversed.

---

1. See 3 Cal. Jur. 802, and Supplement.
2. Use of vehicle by owner as defeating lien for repairs, note, 3 A. L. R. 664.

The facts are stated in the opinion of the court.

Loren A. Butts for Appellant.

Edward Bickmore and R. R. Sischo for Respondents.

PLUMMER, J.—Plaintiff began this action in claim and delivery to recover possession of a certain Dodge truck. Judgment was entered for the defendants and the plaintiff appeals. The plaintiff in his motion for a new trial and also upon appeal contends that the evidence is insufficient to support the findings. The correctness of the judgment depends upon whether the defendants at the time of the prosecution of this action had a valid lien upon the truck in question for repairs made thereon, based upon the finding that such lien existed.

The evidence shows and the court found as a matter of fact that the plaintiff is and at all the times mentioned in the complaint was the owner of the truck involved in this action. The transcript further shows that the plaintiff while the owner of said truck entered into a conditional sales contract with one Jack Hirons. The conditional contract reserved and retained title in the conditional vendor until the truck should have been fully paid for. In the month of July, 1924, Mr. Hirons took the truck to the garage belonging to the defendants, or operated by the defendants, in the town of Los Banos and there had certain repairs made upon the truck to the value of $207.25. The truck, after the repairs mentioned, was returned to the possession of the said Hirons, and the contract to purchase not having been complied with, on or about the sixteenth day of August, 1924, the plaintiff took possession of the truck in question. Thereafter the truck was driven by a driver by the name of Beck. On or about the twentieth day of August, 1924, the driver Beck drove said truck into the alley adjoining the garage operated by the defendants for the purpose of having some adjustment made to the carbureter on the truck. It further appears from the transcript that, after leaving the truck in the alley and requesting adjustment to be made as above mentioned, Mr. Beck went away and was gone a short period of time. Upon returning he found that the truck had been driven

into the garage belonging to the defendants; that nothing had been done about adjusting the carbureter, but was told by the defendants that they were going to hold possession of the truck. The testimony also shows that between the time the defendants did the work upon the truck at the request of Mr. Hirons and before retaking possession thereof as just stated, a period of between three and four weeks elapsed during which period the truck was being constantly used and driven on the highways between Fresno and Los Banos.

The defendants found their claim of lien upon sections 3051 and 2913 of the Civil Code, section 3051 providing that anyone who makes repairs upon personal property at the request of the legal possessor thereof has a lien dependent upon possession for such repairs. Section 3051a of the Civil Code limits the amount of such lien to the sum of $100 unless previous notice by personal service or registered letter has been given to the holder of the legal title to the property. Section 2913 reads: "The voluntary restoration of property to its owner by the holder of a lien thereon dependent upon possession extinguishes the lien as to such property, unless otherwise agreed by the parties, and extinguishes it, notwithstanding any such agreement, as to creditors of the owner and persons, subsequently acquiring a title to the property, or a lien thereon, in good faith, and for value."

There is no conflict in the testimony as to the fact that after the repairs were made to the truck in question in the month of July, it was restored to the possession of Jack Hirons and that the truck was thereafter used as above stated. In founding their claim upon section 2913 of the Civil Code, the defendants rely upon the testimony of Sischo and Watkins. The witness Sischo testified as follows:

"Q. Do you remember the occasion of the truck being taken away, after this new motor block was put in? A. Well, the morning before that, I think it was, the morning prior to Hirons taking the truck away, he came in and wanted to stand me off, wanted me to charge these parts and let him have the truck and charge the parts to him; I told him that Young had the truck back there, and I said, 'As far as I am concerned, I am going to have the

money for these parts, I am going to be paid for these parts,' so he started back in the shop to see 'Young and I went back there with him, and there was a conversation there between the three of us there, and he said he wanted time on the parts and for the labor, claiming he had no money, and wanted to take the truck. 'No,' I said, 'as far as I am concerned, I am going to have either the money or good security,' and then he went out of the place. . . . A. He said he did not have the money to pay for the repairs of the truck at this particular time and so I told Mr. Young, 'as far as I am concerned, if you want to stand Mr. Hirons off for this truck, I will just charge the parts to you,' so Mr. Hirons told Cy that he— Mr. Bickmore. Q. What do you mean by 'Cy'? A. Cy Young told him that he— Hirons said that he had a lot of soda water he wanted to deliver and in three or four days would get the money, would have it made in that time, by going around out in the country here with the soda, and he said, 'I have a lot of stuff to deliver if I can deliver I can get the money and pay you,' and he said, 'If you let me have it for three or four days, I will get the money and if I do not I will bring the truck back in any time that you say and turn the motor over to you,' and then Mr. Young agreed to let him have it and I charged the parts direct to Mr. Young. Q. Do you know how much the sum total of these parts and the work amounted to that was charged on this motor? A. Something over $200. Q. You do not know the exact amount? A. No, sir; something over $200. The Court. That is Young's bill? A. For the parts and labor. Q. You say you did not see this man who preceded you on the stand, that day? A. No, sir; I did not. I was not there at the time the truck was taken out. Q. Was anything said between Young and Hirons as to what was to be done with the truck in case the bill was not paid? A. He said he was going around in the country and if he did not pay he would return it."

Following is the testimony of the witness Watkins: "Q. Were you present at any conversation in the shop when Charles Young, known as Cy Young, and Hirons were present, and they had a conversation about the truck? A. Yes, sir. . . . Q. And what was said between them with reference to this truck. A. Well, I was working on a

Hudson right by the door and they come back and was standing right there near where I was working on the Hudson and, of course, I did not hear everything that was said. I know that Hirons wanted his truck and we had done little jobs on it before, but he wanted to take it away the same as he had done before and pay for it a few days afterwards, and I heard Mr. Sischo say, well, he wanted his money, he did not care what was done, and Mr. Hirons was working in the soda works and I told him that he needed the car to make delivery of the soda through the country there and he said that he would get the money from the soda and would come in and pay the bill or return the truck and so they let him have the truck with the understanding that he could have at least three or four days until he got his stuff delivered and he would have the money and if not he would bring the truck back to them to keep until he got the money and paid the bill."

[1] This testimony shows beyond any controversy that whatever the effect of the agreement or conversation had with Mr. Hirons at the time of the delivery of the truck to him after the making of the repairs by the defendants, the delivery was not to the *owner* of the truck and, therefore, section 2913 of the Civil Code, relied upon by respondents, has no application whatever. The record does not show that any notice was ever given to the owner or that the plaintiff, the owner of the truck, had any knowledge or notice of the repair being made upon the truck or that the defendants had any lien, or made any claim of lien upon the truck until on or about the twentieth day of August, 1924, when they repossessed themselves of the truck, after the plaintiff had exercised his option in taking possession of the truck from the conditional purchaser, Jack Hirons, on account of Hiron's failure to make the payments specified to be made in the conditional sales contract. It will be noticed also that the conversation held by the two witnesses between Mr. Hirons and the defendants did not, and does not, purport to continue any lien, but at its best constitutes only a promise on the part of Hirons to pay for the repairs, and if he did not pay for the repairs, to bring the truck back again, but as said above, the effect of the conversation as to whether it does or does not amount to a continuance of the lien is wholly

immaterial, for the simple reason that it was not made with the owner of the truck. In the case of *Goodman* v. *Anglo-California Trust Co.*, 62 Cal. App. 702 [217 Pac. 1078], this court, in the first appellate district, had presented to it for consideration a written agreement between a repairman and a conditional vendee whereby the conditional vendee purported to transfer his interest in a certain automobile to the repairman and it was argued that the agreement preserved the lien under section 2913 of the Civil Code. The court said:

"However, Green and Gohl permitted Brian to take the automobile out of their possession after he had signed an agreement transferring all his right, title, and interest in the same to them for their protection until the repair bill should be paid. We shall pass the question as to the sufficiency of this writing to retain the lien by evidencing an agreement of the parties that it should continue in effect, because even though this writing be held sufficient to evidence such an intention upon the part of the parties thereto, nevertheless it would not have that effect as to the bank, the real defendant here. (Sec. 2913, Civ. Code; *Thourot* v. *Delahaya Import Co.*, 69 Misc. Rep. 351 [125 N. Y. Supp. 827]; *Rehm* v. *Viall*, 185 Ill. App. 425; *McFarland* v. *Wheeler*, 26 Wend. [N. Y.] 467.) We may disregard, therefore, that writing."

The bank in that case was the real owner, and, as said by the court in that case, the agreement was not with the owner. It is true that the case we have referred to was really decided upon other grounds, but the quotation contains, we think, a correct statement of the law.

[2] "The lien having once been lost by surrender of possession cannot be revived by any subsequently reacquired possession." (19 Am. & Eng. Ency. of Law, p. 28, and authorities there cited.) The authorities there cited also show that delivery of possession is a surrender of the lien unless limited by the section of the code to which we have referred.

It is further argued by respondents that a conversation between counsel had at the time of the trial constituted a stipulation that judgment might be entered for the defendants for the amount claimed, irrespective of the provisions of section 3051a of the Civil Code, in the event that a valid

lien was established, but owing to the unavoidable conclusion that no lien has been established in this case, we deem it unnecessary to discuss such conversation for the purpose of determining whether it did or did not amount to a stipulation. Being of the opinion that the testimony is wholly insufficient to support the finding that the owner of the truck had agreed to a continuance of the lien and that whatever conversation was had concerning the same was with a person who was not the owner of the truck, it follows that the judgment must be reversed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.