SHAW, P. J.
 

 This is an action to recover possession of an automobile. Plaintiff is the successor in interest of a seller who made a conditional sale of the automobile to one Ansted. The seller delivered possession of the automobile to Ansted, but retained title until the price was paid and also the right to retake possession in case of default by Ansted. Ansted used the automobile in his business and stored it with defendant, a garage keeper, taking it from defendant’s garage every morning and bringing it back every night. Defendant stored the automobile, performed services on it, supplied it with gasoline and furnished and affixed to it certain accessories. Ansted owned successively three automobiles which he kept in defendant’s garage, the one here in dispute being the third. While he had the first, he made
 
 *Supp. 759
 
 a written contract for storing it with defendant, in which was an express agreement that defendant’s lien on the automobile should not be extinguished by its voluntary restoration to Ansted. By its terms this contract referred only to the first automobile, which was described in it. No such agreement was made regarding the automobile here in question. On August 21, 1933, Ansted ceased to take the automobile in question from the garage and it remained there continuously from that date until taken by mesne process in this case. On September 15, 1933, a part of the price of the automobile was due and unpaid, and plaintiff demanded possession of it from defendant, at the same time offering to pay defendant all its charges accrued since August 21, 1933. Defendant refused the offer, demanding payment also of its charges on the automobile which had accrued prior to August 21st.
 

 The question for solution is whether, under the circumstances, defendant retained a lien on the automobile for its charges accrued prior to August 21st, in spite of the fact that it daily surrendered possession of the automobile to Ansted, who daily returned it to defendant. We are of the opinion that by each such surrender of possession defendant lost its lien for all charges previously incurred, and that this lien was not revived by the subsequent act of Ansted in returning the automobile to defendant’s garage. The inconvenience resulting to garage keepers from such a conclusion is strongly urged against it, but where the law is clear, as we think it is here, such inconvenience cannot justify a court in ignoring it. If relief from such a rule is needed, it should be sought from the legislature.
 

 The garage keeper’s lien is provided for in section 3051, Civil Code, in the following language: “keepers of garages for automobiles shall have a lien, dependent on possession for their compensation in caring for and safekeeping, and for making repairs and performing any labor upon or furnishing supplies or materials for such automobiles;”. The same section contains provisions for several classes of liens, all of them using the words “dependent on possession”, or equivalent language. As the Supreme Court said regarding this section in
 
 First Nat. Bank
 
 v.
 
 Silva,
 
 200 Cal. 494, 497 [254 Pac. 262] : “There seems to be no difference in the legal meaning of the language used in reference to the dif
 
 *Supp. 760
 
 ferent liens there provided for, although there is some difference in the actual language used. . . . While the language differs, the meaning is the same, that is, the lien is dependent upon the possession of the article upon which the lien is claimed by the one asserting the lien, and may be maintained until "the lien is discharged by payment.”
 

 Section 3051 also gives a lien “dependent on possession” to one who repairs an article of personal property. In several cases relating to a repair man’s lien it has been held that a surrender of possession of the subject of the lien by the lien claimant ends the lien and that such lien is not revived by his subsequent regaining of such possession.
 
 (Davis
 
 v.
 
 Young,
 
 75 Cal. App. 359 [242 Pac.
 
 743]; Covington
 
 v.
 
 Grant,
 
 82 Cal. App. 749 [256 Pac. 213];
 
 Goodman
 
 v.
 
 Anglo-California Trust Co.,
 
 62 Cal. App. 702 [217 Pac.
 
 1078]; Lundblade
 
 v.
 
 Pierce,
 
 95 Cal. App. 192 [272 Pac. 329].) The section itself suggests no distinction in this respect between a lien for repairs and one for storage, and the Supreme Court has said in
 
 First Nat. Bank v. Silva, supra,
 
 that there is none.
 

 Neither do we find anything in the section from which to conclude that mere constructive possession is sufficient to satisfy its requirements. In fact, we cannot see that defendant had even constructive possession of the automobile while it was in the hands of Ansted. The term “constructive possession” is used to designate “the relation between the owner of the property and the property when the owner is not in actual possession thereof”. (12 Corpus Juris, 1305;
 
 Hayes
 
 v.
 
 Moffatt,
 
 83 Mont. 185 [271 Pac. 452].) Neither defendant nor Ansted was the owner of the car, but Ansted was more nearly in that class, for he had • the general right of possession, subject to the conditional sale contract. His agreement with the defendant, even if it had by subsequent dealings been made applicable to this automobile, which does not clearly appear from the stipulation, did not make the defendant the owner of the car nor did it make Ansted its agent to hold the car for it—if that could legally be done. He would no doubt have been greatly surprised, and justly so, if told that while he was using the car defendant had any sort of possession of it.
 

 Section 2913, Civil Code, provides that the voluntary restoration of personal property “to its owner” by the
 
 *Supp. 761
 
 holder of a lien thereon “dependent upon possession” extinguishes the lien unless the parties otherwise agree, and that such agreement is not effective as to creditors of the owner and subsequent
 
 bona fide
 
 purchasers and encumbrancers. No doubt the contract between defendant and Ansted was made with this section in mind. But this section does not apply to such a situation as we have here, because the car was not returned to its owner, the plaintiff, and the agreement was not with it, but with Ansted. Hence, the contract cannot continue defendant’s lien after its surrender of possession, or afford it any defense against plaintiff.
 
 (Goodman
 
 v.
 
 Anglo-California Trust Co., supra; Davis
 
 v.
 
 Young, supra.)
 

 While section 2913 does not apply to this particular case, it seems to us to cut the foundation from under the argument that the legislature must have meant, by section 3051, to continue the lien, without any agreement, in cases of automobile' storage where the car is daily or regularly taken from storage and used by the person who stores it and then returned. Where that person is the owner, section 2913 applies directly to the case and ends the lien as soon as the car is voluntarily restored to him, regardless of the length of time it has been in storage or the use that is being made of it. It does not appear that any such statutory provision was involved in the decisions from other states holding that the lien continues in cases such as we have here. No reason appears for making a different rule, or one more favorable to the garage keeper, in cases where the party storing the car is not the owner, and nothing in section 3051 requires or suggests such a different rule.
 

 To hold that the lien continues after surrender of possession in such cases as we have here, would be in effect to write an exception into section 3051. That section contains an express exception applicable to automobiles, in the proviso that where the lien claimant loses his possession by reason of fraud, trick or device, his subsequent repossession of the automobile shall revive his lien. According to a well-established rule of statutory construction, it will be presumed that no further exceptions were intended.
 
 (Belloc
 
 v.
 
 Rogers,
 
 9 Cal. 123, 128;
 
 Merchants Nat. Bank
 
 v.
 
 Continental Nat. Bank,
 
 98 Cal. App. 523, 532 [277 Pac. 354];
 
 *Supp. 762
 

 Rothschild
 
 v.
 
 Superior Court,
 
 109 Cal. App. 345, 348 [293 Pac. 106].)
 

 Another reason for holding that defendant has no lien is suggested to us by the authorities. In
 
 Lowe
 
 v.
 
 Woods,
 
 100 Cal. 408 [34 Pac. 959, 38 Am. St. Rep. 301], it was held that no lien is created in favor of a livery stable keeper for feeding a horse left with him by one having possession thereof under a contract of conditional sale, by the terms of which title is retained by the seller until the price is paid, and that such a lien could be created only by the owner or by someone authorized to act for him. This decision was made upon a consideration of the provision of section 3051 regarding livery stable keepers’ liens, which is, in its operative words, identical with the provision as to garage keepers’ liens. Both of these provisions differ from that regarding a repair man’s lien, which extends to work done at the request of the legal possessor of the property, and on this ground the decision in
 
 Lowe
 
 v.
 
 Wood, supra,
 
 has been distinguished and it has been held that the repair man has a lien for work done at the request of a conditional vendee.
 
 (Davenport
 
 v.
 
 Grundy etc. Co.,
 
 28 Cal. App. 409 [152 Pac. 932];
 
 Goodman
 
 v.
 
 Anglo-California Trust Co., supra.)
 
 But as far as its application to the present ease is concerned,
 
 Lowe
 
 v.
 
 Woods, supra,
 
 has never been overruled or distinguished, and it was cited and the principle on which it is based was adopted and followed in
 
 McTigue
 
 v.
 
 Arctic etc. Co.,
 
 20 Cal. App. 708, 718 [130 Pac. 165], However, since
 
 Lowe
 
 v.
 
 Woods, supra,
 
 was decided, section 3051a has been added to the Civil Code, and it seems to assume that liens may arise under section 3051 for automobile storage at the request of persons other than the legal owner. If such a provision were written into section 3051, it would, of course, reverse the rule of
 
 Lowe
 
 v.
 
 Woods, supra,
 
 but since section 3051a does not purport to create any liens, there may be some question as to its effect in this respect. This matter has not been argued and we do not base our decision upon it, but suggest the point now for further consideration whenever necessary, and as a matter to which the attention of the legislature may well be turned.
 

 We are aware that a decision contrary to our holding was made by the San Francisco Appellate Department in
 
 Pacific States Finance Corp.
 
 v.
 
 Freitas,
 
 113 Cal. App. (Supp.) 757
 
 *Supp. 763
 
 [295 Pac. 804], We have carefully considered that decision in order to avoid a conflict if possible, but find ourselves unable to agree to the conclusion there reached.
 

 The judgment is reversed and the case is remanded to the municipal court with directions to render judgment for plaintiff, appellant to recover its costs of appeal.
 

 Fox, J., concurred.