[Crim. No. 612. Fourth Dist.—June 13, 1941.]

THE PEOPLE, Respondent, v. GUS PHOTO, Appellant.

346

Richard C. Fildew for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

GRIFFIN, J.—Appellant Gus Photo, also known as Constantine Photopoulos, and Pete Adams were each charged in separate informations with the crime of grand theft in that they did on November 14, 1940, wilfully and feloniously steal, take and carry away 398 boxes of oranges of the value of $398, the personal property of Mrs. J. A. Prescott. Gus Photo was also charged with a prior conviction of a felony which he admitted. After a plea of not guilty a jury was waived by both Photo and Adams. The two cases were consolidated for trial by stipulation. Both defendants were found guilty by the trial court and sentenced to state's prison. From the judgment and the order denying them a new trial each has perfected a separate appeal. The facts involving each of the appellants may be thus summarized:

James Plakos resided in Los Angeles and was engaged in the business of buying and selling citrus fruits. He knew the appellant Photo and on November 10, 1940, at the latter's request, he went with one Peter Regis and appellant Photo to Orange County with the end in view of obtaining oranges which Photo might purchase. These parties all called at the home of a Mrs. Prescott. Plakos went inside the house and found Mrs. Prescott to be ill in bed at the time. He had a conversation with her about oranges and thereafter came outside the house where Regis and Photo were waiting for him. Plakos told Photo that Mrs. Prescott knew somebody else who

had some oranges; that Mrs. Prescott wanted 75¢ a box for oranges and 25¢ a box for picking, hauling and washing. With a Mr. Allen, foreman for Mrs. Prescott, they all went to the orange grove of a Mr. Holmes. Upon arriving at the Holmes grove Photo looked around the grove, saw the oranges on the trees, and gave Holmes a deposit of $30 and each signed an agreement as follows:

"November 10, 1940. Sold to Constantine Photopoulos, address 2445 Clement Street, San Francisco. 500 (more or less) boxes of oranges at 75¢ per box. All oranges to be paid for before hauling from grove.

(Signed) CONSTANTINE PHOTOPOULOS."

And

"November 10, 1940. Received of Constantine Photopoulos $30.00 on oranges as down payment. Balance to be paid as they are picked not later than November 13, 1940.

 boxes "Signed F. R. HOLMES.

"500/ (more or less) of oranges at 75¢ per box to be paid road side.

"Signed F. R. HOLMES."

Appellant Photo told Holmes that Mrs. Prescott was going to pick the oranges, and after some conversation they all left. Plakos went back to Mrs. Prescott's home and had a conversation with her and then returned to Los Angeles. Upon arriving in Los Angeles Plakos phoned Mrs. Prescott and told her that Photo had told him to tell her not to wash the oranges; that she did not have the right equipment. Mrs. Prescott then said that she would take 25¢ a box in any event, whether she washed them or not, or she would not "give the fruit". Plakos forwarded this information on to appellant Photo. Photo returned on November 11th and consulted with Mrs. Prescott, who was still ill in bed, about the oranges. Photo informed her he was the man who bought the oranges and wanted enough to make up 450 boxes. Photo then examined the fruit in the packing house. 40 boxes had been washed. The foreman and Photo returned to her room. He left a draft drawn on the Western Union for $125. $120 of it was to apply on the payment for the fruit. Holmes had previously refused to accept the check in payment for his fruit and referred Photo to Mrs. Prescott. Photo argued

about the price being charged for the washing. After some discussion he told her to go ahead and wash the fruit. She replied that "the fruit would be a dollar a box". On Thursday, November 14th, Photo motored to the Prescott ranch in his own Chevrolet automobile. Adams, a truck driver for Photo, first appears in the picture. He drove a truck and trailer, owned by Photo, to the packing house shed at Photo's direction for the purpose of trucking the oranges back to San Francisco. They arrived there about noon. The foreman for Mrs. Prescott and Adams loaded the truck with the 382 boxes of oranges which had been picked from the Holmes grove. 16 extra boxes were Mrs. Prescott's oranges and were loaded later, by one of the packing house men who claimed the price of the 16 boxes was to be $1.40 each. After the fruit had been loaded Photo returned to Mrs. Prescott's room with Holmes and informed her that the fruit was on his truck and said that he was ready to pay for the fruit. Adams remained at the truck. Mrs. Prescott and Photo figured up that he owed her $382 for the Holmes fruit (which included 25¢ per box to her and 75¢ per box for Holmes). Her testimony in reference to the price and sale of the 16 boxes of oranges is confusing and not clear. It rather indicates that she intended to charge Photo $1 per box for her fruit. He then paid $140 in currency to her, making $290 in all which she turned over to Mr. Holmes. It was stipulated that Holmes was paid in full for his fruit. She testified that she figured the balance due her was $92. Photo then asked her to call the Western Union in Santa Ana and see if there was some money there for him. She called and was informed that there was, but the amount was not specified. He said: "I will go in there and get that money and I will be right back." He left in the Chevrolet automobile. Adams remained around the premises all afternoon, conversing with Mrs. Prescott. Both wondered what had happened to Photo because he had not returned up until 9 p. m. Adams was given his dinner at her home. About 9 p. m. Adams suggested that he leave the key to the truck and his operator's license with her because he "was ready to throw things up and go on home". Mrs. Prescott asked him to stay in her living room and said that they would probably hear from Photo soon but "under any circumstances, you must not move this truck tonight, because I would have to report it to

the police if you moved it. . . . You must leave the fruit until morning''. Adams replied that he ''couldn't make it until the next night anyway because the truck wouldn't pull'' the ridge in the day time, to which she replied, ''Well, . . . there would be no harm in your waiting''. She offered him a ride to town to a hotel but he said he would walk. After giving her his name, the key, and operator's license and after being told by Mrs. Prescott that ''he looked like an honest boy'', he walked to the city and later found Photo. Mrs. Prescott testified that before Photo left, there had been no discussion as to when the fruit was to be taken except ''they were ready to leave as soon as he paid for it''. It was not stated at that time that Mrs. Prescott was retaining possession of the fruit. It was voluntarily and unconditionally placed on Photo's truck. Nothing was said at any time as to Mrs. Prescott's claiming any lien thereon under section 3051 of the Civil Code or otherwise.

F. J. Oxnard, assistant court reporter in Orange County, testified that he saw appellant Photo on November 14th in the court room in Santa Ana; that appellant Photo walked in and talked to him; that he asked how soon he could contact a Mr. Burke, an attorney; that he wanted the advice of an attorney and Oxnard told him that Burke was engaged in trying a case and that it would be an hour or so before he would be free to talk to him; that appellant Photo then told the witness that he had bought some oranges and that there was a dispute as to the price; that he claimed he had to pay so much and the other party was to pay so much; that he was anxious to get the advice of an attorney so he could take the load to San Francisco that night; that appellant Photo then asked him if he could impound the money with the sheriff for the amount that he was supposed to pay and take the fruit; and that Oxnard replied that he probably could and then afterwards fight it out as to the price. Appellant and Adams were not permitted to take the stand and testify at the trial upon advice of counsel. Although appellant's brief recites the fact that Photo did go to the sheriff's office and endeavor to impound some money and that the sheriff refused to accept it due to the fact that it was a civil case, the evidence does not disclose this fact. It was stipulated that no money was impounded with the sheriff. It was also

stipulated that Photo received $70 at 3:40 p. m. at the Western Union Telegraph office.

Some time after 9 p. m. on November 14th, Photo, with Adams, returned to the Prescott ranch. Photo had a duplicate set of keys for the truck. He drove the truck and oranges to Los Angeles. Adams drove the Chevrolet to that city. Adams then rode on the truck with Photo to San Francisco. Their arrest on the charges herein specified followed. On their return to Santa Ana they were questioned by the officers. Appellant Photo, it is claimed, stated that he had not taken Mrs. Prescott's fruit; that he had taken his own fruit; that 25¢ a box was too much for handling it; that before leaving with the fruit he had consulted with an attorney in Santa Ana to get his advice on procedure before removing the fruit so he could keep out of trouble; that he wanted to put up a bond or cash equivalent to a bond; that he saw a man outside of the court room where Burke was then engaged in trial who told him that it was all right to go ahead and move the fruit, and let them make the first move; that he then started out for the Prescott ranch but had trouble with his car and didn't arrive until later in the evening; that Adams was driving the car and when they arrived at the ranch appellant Photo had another key to the truck and Photo drove the truck out; that Adams drove the Chevrolet; that Photo was willing to pay for the fruit if Mrs. Prescott would cancel the charge of 25¢ a box for hauling and washing; and that with reference to the 16 boxes belonging to her and which the packing house man had loaded on the truck, he had made no deal to purchase any oranges from her.

Mrs. Prescott's packing shed was about 400 feet back from her house and a road ran in front of the shed cutting through the premises to the highway. The truck was parked on this roadway in front of the shed and the fruit was loaded onto the truck while in this position. Upon this evidence the trial court found both defendants guilty as charged.

On a motion for new trial appellant offered, under the ground of newly discovered evidence, an affidavit showing that Mrs. Prescott did not, during all the times herein mentioned, have a license to act as either a produce dealer or a commission merchant, as required by section 1261, subdivisions e and f, and section 1273 of the Agricultural Code.

Appellant claims error in denying his motion for new trial on this ground as well as on the ground that the verdict is contrary to the law and the evidence.

It is first argued: (1) That under the charge, appellant did not "take the property of another"; (2) that the oranges were fully paid for and were the property of appellant Photo; (3) that the only interest Mrs. Prescott could have had in and to the oranges purchased from Holmes was a special interest created by virtue of a lien under section 3051 of the Civil Code; (4) that she was not rightfully in possession of the fruit, under the evidence, and therefore no lien was created; (5) that she was not a produce dealer or commission merchant within the meaning of the Agricultural Code, had no license as such, and therefore was not entitled to claim a lien; (6) that if she had a lien it was lost by her failure to make a separate demand for her charges; (7) that the services rendered did not improve the fruit and were not therefore a basis for a lien under section 3051 of the Civil Code; (8) that Mrs. Prescott's employees delivered possession of the fruit to appellant Photo and Adams, when they placed it upon appellant Photo's truck, thereby extinguishing any lien under that section; (9) that there was no intent to steal; that appellant Photo took his own property under a claim of right and upon advice of a court attaché whom appellant thought was a lawyer; (10) that the value of services performed did not amount to grand theft but if anything, petit theft; and (11) that there is a fatal variance between the proof and the charge in that the information does not plead the fact that the appellant Photo took his own property which was subject to a lien.

 The allegation in the information that appellants "took the personal property of another", as that term is used in section 484 of the Penal Code, means property in the possession of another who is entitled as bailee, lien claimant, or otherwise, to retain possession thereof for some benefit or profit to himself to the exclusion of all others, rather than the absolute ownership, defined in section 679, Civil Code. If the proof established such right in the instant case, the offense of grand theft was properly pleaded. If Mrs. Prescott had and maintained a valid lien on the fruit, her possessory right was to *all* the oranges and not merely those of a value to the extent of the lien. (*People* v. *Cain,* 7 Cal. App. 163

[93 Pac. 1037].) Such a lien may be created under section 3051, Civil Code; *Golden State Orchards* v. *Harter,* 93 Cal. App. 390 [269 Pac. 735]. The question whether Mrs. Prescott was a licensed produce dealer or commission merchant did not become involved under the evidence. All of the other contentions of appellant are sufficiently answered by the holding in *People* v. *Cain, supra,* except these questions: (1) Whether Mrs. Prescott had and retained a lien on the fruit when appellant Photo drove the truck away; (2) whether the evidence related overcame the presumption of innocence and established beyond a reasonable doubt that the appellant did wilfully and feloniously steal the property of Mrs. Prescott; and (3) if appellant Photo can be found guilty under the charge, is the evidence sufficient to support a conviction of Adams as an accomplice or an accessory. Appellant cites *People* v. *Devine,* 95 Cal. 227 [30 Pac. 378], which holds that to constitute the offense of larceny, there must be a felonious intent, and where there is absence of proof of such intent, and the evidence tends to prove that the property taken was honestly believed to be the property of the defendant accused of larceny, the fact that he took and carried away the property of another does not justify a verdict of larceny. The court there said, "Appellant acted throughout as he would be expected to act if he thought he was dealing with his own property, and the evidence tends strongly to prove that he really and honestly so thought. We think that the evidence, coupled with the presumption of innocence, which attends the accused from first to last, sufficient to overcome the presumption of a guilty intent, arising from a wrongful appropriation of the property of another." Many cases are cited, including *State* v. *Homes,* 17 Mo. 379 [57 Am. Dec. 269], quoting Mr. Freeman: "To constitute the offense of larceny, it is absolutely necessary that the taking of the goods be with a felonious intent. . . . We cannot sustain the conviction without confounding the distinction between criminal acts and such as, however reprehensible, involve only a violation of private rights and injuries, for which there is a remedy only by civil action". Section 511, Penal Code, provides: "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does

not excuse the unlawful retention of the property of another to offset or pay demands held against him." This rule also applies to larceny. (*Burke* v. *Watts*, 188 Cal. 118 [204 Pac. 578].)

*People* v. *Eastman*, 77 Cal. 171 [19 Pac. 266], involved the taking of a mare, which was pledged by the owner with another party for a disputed unpaid claim for wages. The defendant took the mare openly and without any concealment and pledged her to another party. The court there said: "It is one thing to take and carry off personal property with the intention to steal, and another to take it away under a mistaken idea of legal rights honestly entertained, . . . ".

Felonious intent is an essence of the crime of larceny. The general rule stated in 36 C. J., section 105, page 764, is: "If one, in good faith, takes the property of another, believing it to be legally his own, or that he has a legal right to its possession, he is not guilty of larceny, although his claim is based on a misconception of the law or of his rights under it, for although ignorance of law and honest intentions cannot shield a man from civil liability for a trespass committed by him, yet they do protect him from criminal liability, by divesting the act of the felonious intent without which it cannot be a crime. It is necessary, however, in all cases that the claim of right to be a *bona fide* one, and not a mere cover for a felonious taking, and must be something more than a vague impression; it must amount to an honest conviction. Knowledge of the existence of an adverse claim by another person does not negative the existence of good faith."

From the evidence it appears that Photo apparently took the fruit, under a claim of title in himself, and if done in good faith after receiving what he thought was legal advice though it might have been erroneous, a presumption arose in his favor that the taking lacked the elements necessary to constitute larceny. This theory is upheld in *Groover* v. *State*, 82 Fla. 427 [90 So. 473, 26 A. L. R. 375], and cases there cited. However, in view of the following determination this point becomes unnecessary to decide.

Respondent endeavors to uphold the felony conviction solely on the theory of the lien claimed by Mrs. Prescott on the Holmes fruit at the time of the alleged taking. All

agree that if she had no lien at that time on that fruit the felony charge must fall as to both appellants. It is also admitted that her lien thereon was dependent upon possession, and if she voluntarily relinquished possession of the fruit to appellants, her lien was extinguished. We are not without authority upon this point in our own state. (*People* v. *Knox*, 32 Cal. App. 158 [162 Pac. 407]; *Pacific States Finance Corp.* v. *Freitas*, 113 Cal. App. (Supp.) 757 [295 Pac. 804]; *Covington* v. *Grant*, 82 Cal. App. 749 [256 Pac. 213].) The law is clear that if a lien is lost by voluntary and unconditional surrender of possession to the owner, it cannot be revived by any subsequent reacquired possession. (*Davis* v. *Young*, 75 Cal. App. 359 [242 Pac. 743].) ▮ The question here presented is whether the voluntary and unconditional delivery and loading of the fruit on appellant's truck by Mrs. Prescott's agents without any reservation whatever, under the circumstances here related, constituted a delivery of possession of the fruit to its legal owner. The evidence is clear that nothing was said by Mrs. Prescott or anyone else about her having or claiming a lien on the fruit. The price of $1 per box was fixed as the price appellant Photo must pay to her for the Holmes fruit. The evidence discloses that Mrs. Prescott and appellant Photo had considerable controversy as to the amount she was charging for the washing of the fruit. Mrs. Prescott at one time agreed to "take off a nickel a box . . . if you do not want it washed. . . . " Photo suggested that Mrs. Prescott make the price of the Holmes fruit less than $1 per box, to which she replied, "it is difficult for me to make the price of the fruit less, because that day we had turned down two opportunities to sell the fruit for $1.30 a box, and that I couldn't see how we could charge less for the fruit when we had an opportunity to sell it, even though he didn't want it washed . . . , the price of the oranges is here in the packing house, . . . . . . he was to pay a dollar a box for the oranges at Mr. Holmes' grove, . . . " Evidence also discloses that Photo asked Mrs. Prescott to give him 4 or 5 more boxes of oranges due to shrinkage, to which she replied, "You go on. If you don't want that fruit, I will take it myself. . . . " It was not until the truck was loaded and ready to be moved that appellant Photo encountered difficulty in settling the price to be paid and the time and method of payment. Photo was not told by

Mrs. Prescott that he could not remove the truck until the price was paid. It was not until 5 or 6 hours after the truck was loaded and after Photo left, that Adams was told not to move the truck until the money was received. The giving of the key and license to her was purely voluntary on the part of Adams and was most convincing evidence of his good faith in the transaction. The evidence forces the conclusion that when the truck was loaded and appellant Photo was placed in possession of his fruit, Mrs. Prescott's lien thereon was extinguished. In effect, she was merely endeavoring to hold his truck with the fruit thereon to insure the collection of her charges, or the most that could be said was that she was endeavoring to regain possession of the fruit after she had parted with possession. (*People* v. *Eastman, supra; Simons* v. *Hill Street Fire Proof Building Co.,* 69 Cal. App. 129 [230 Pac. 955].) Accordingly, the conviction of grand theft cannot be upheld.

It is therefore ordered that the judgment and order denying a new trial are and each is reversed.

Barnard, P. J., concurred.

MARKS, J., Concurring.—I concur.

I concur in the judgment and agree with that portion of the opinion which holds that Mrs. Prescott had waived her lien on the oranges by unconditionally delivering them to Photo when her agents loaded them on the truck.

The only lien Mrs. Prescott could have claimed on the oranges was under the provisions of section 3051 of the Civil Code which makes the lien dependent on possession in cases of this kind. Section 2913 of the Penal Code provides that the voluntary surrender to the owner of the property on which the lien is asserted extinguishes the lien.

It is clear that Photo became the owner of the Holmes oranges when he paid for them in accordance with the terms of his written contract. Mrs. Prescott was never the owner of that fruit. Her lien, therefore, was extinguished when she delivered unconditional possession to Photo and it could not be revived by her subsequently taking possession of the property. (See, *Davis* v. *Young,* 75 Cal. App. 359 [242 Pac. 743]; *Covington* v. *Grant,* 82 Cal. App. 749 [256 Pac. 213]; *Lundblade* v. *Pierce,* 95 Cal. App. 192 [272 Pac. 329]; *Jewett* v. *City*

*Transfer & Storage Co.,* 128 Cal. App. 556 [18 Pac. (2d) 351]; *C. I. T. Corp.* v. *Biltmore Garage,* 3 Cal. App. (2d) (Supp.) 757 [36 Pac. (2d) 247].)

The exact terms of the transaction involving the delivery to Photo of the sixteen boxes of oranges belonging to Mrs. Prescott are not at all clear. The delivery was voluntarily made by Mrs. Prescott's foreman and the circumstances point to a sale of that fruit on credit which would not support the charge of the theft of that fruit. However, the sixteen boxes of oranges did not have sufficient value to support the conviction of grand theft. (Sec. 487, Pen. Code.)