[Crim. No. 1343.   Second Appellate District, Division Two.—December 7, 1926.]

THE PEOPLE, Respondent, v. L. B. WARRINGTON, Appellant.

[1] Principal and Agent— General Power of Attorney — Funds Entrusted for Specific Purpose.—An agent holding a general power of attorney is not authorized to divert funds of the principal entrusted to said agent in confidence for a specific purpose which is limited and made definite by the principal.

[2] Criminal Law—Grand Larceny—Checks as Money—Evidence. In a prosecution for grand larceny, it is not error to overrule defendant's objections to the checks of the complaining witness being introduced in evidence, where such checks were drawn upon the account of the complaining witness in a given bank and were cashed by defendant.

[3] Id.—Construction of Evidence — Verdict — Appeal.—An appellate court is not authorized to discredit testimony which, by their verdict, the jury have indicated that they believed to be true, but must consider in its strongest light all evidence tending to support the verdict, and disregard such conflicting evidence as is inconsistent with the jury's decision.

[4] Id. — Impeachment of Complaining Witness — Statements in Civil Suit — Insufficient Foundation. — In a prosecution for grand larceny, where the complaining witness has filed a civil suit against defendant and it is sought to impeach said witness by statements made in her complaint in said suit, she should be shown such writing before any question is put to her concerning

3.   See 8 Cal. Jur. 587, 588; 2 R. C. L. 197.

it; and where that is not done, but defendant's counsel seek to secure the introduction in evidence of said pleading, an objection on the ground that no proper foundation has been laid is properly sustained.

[5] ID. — ESCROW AGREEMENT — PAYMENTS TO THIRD PERSON — EVIDENCE—ARGUMENT.—In such prosecution, it having been shown that defendant had caused the complaining witness and another person to execute an escrow agreement in connection with the purchase of certain real property, and that defendant had obtained money from the complaining witness to apply thereon, but later insisted that he was authorized to and did apply the money as he saw fit, and that he had paid the money to a third party, it was necessary that the jury fully understand said escrow agreement and know what was required thereby, and it was not error for the district attorney to discuss said agreement in his argument to the jury.

[6] ID.—SUBSEQUENT CONVERSATION—EVIDENCE.—In such prosecution, the complaining witness having testified that a certain check was given defendant in the same transaction as that in which the escrow agreement was executed, and upon her cross-examination, upon being asked if as a matter of fact she did not give defendant said check to be applied on a certain oil land deal, she having replied that she did not hear of said oil land until after defendant had received the money, it was not error to sustain the prosecution's objection to a question as to what she heard about the oil land deal.

[7] ID.—THEORY OF DEFENSE—EVIDENCE.—In such prosecution, where it was defendant's theory that he was authorized to apply the money of the complaining witness as he saw fit and that his payment of the money to a third person was in accordance with such authorization, he was entitled to testify fully as to that theory, and to give his reasons for evading or ,varying the alleged trust agreement between himself and the complaining witness; but the error, if any, of the trial court in sustaining the prosecution's objection to questions asked by one of the jurors, during the direct examination of defendant, as to why said third person should have received the money, was not sufficient to justify a reversal, where both prior to and succeeding such ruling defendant had ample opportunity to, and did, state his reasons for each of his acts, which the evidence of the prosecution flatly and unqualifiedly denied.

[8] ID.—DIFFERENT OFFENSES—PLEADING—ELECTION.—Under section 954 of the Penal Code, two or more different offenses connected together in their commission, or different statements of the same offense, may be charged under separate counts, and the prosecution is not required to elect between them.

---

8.  See 14 Cal. Jur. 651.

[9] ID.—GRAND LARCENY—FRAUD OR ARTIFICE—RELATION OF TITLE—
INSTRUCTIONS—EVIDENCE.—In this prosecution for grand larceny,
the jury was properly charged that when, by means of fraud or
artifice, or any other kind of contrivance, the possession of prop-
erty is fraudulently obtained from another, and the party ob-
taining this possession acquires it by means of this fraud or arti-
fice, with the felonious intention of stealing it when he gets
possession of it, then the crime is larceny, provided that the owner
retains title thereto; and the facts delineated by the people's
witnesses justified the verdict of guilty.

(1) 2 C. J., p. 584, n. 10.    (2) 36 C. J., p. 853, n. 66 New.    (3)
17 C. J., p. 223, n. 38, 42.    (4) 40 Cyc., p. 2732, n. 76.    (5) 36 C. J.,
p. 878, n. 60.    (6) 40 Cyc., p. 2484, n. 69.    (7) 17 C. J., p. 337, n. 27.
(8) 31 C. J., p. 790, n. 4.    (9) 36 C. J., p. 779, n. 32, p. 899, n. 34.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.
Charles S. Burnell, Judge.    Affirmed.

The facts are stated in the opinion of the court.

J. E. Light for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy
Attorney-General, for Respondent.

CRAIG, J.—The appellant was indicted by the grand
jury of Los Angeles County in ten counts charging em-
bezzlement, grand larceny, and obtaining money under false
pretenses.    The last four counts were dismissed and the
jury found the defendant not guilty of embezzlement, but
convicted him of grand larceny as charged in counts num-
bered 2, 4, and 6 of the indictment.

It appears that appellant was a neighbor and friend of
one Emma J. Baker, who testified that she had confidence
in him and trusted him; that prior to August 8, 1923, he
represented to Mrs. Baker that he was the owner of interests
in oil lands and leases, and that he contemplated the estab-
lishment of an oil refinery upon certain land adjoining that
of one Frank Hutter; that if she would purchase Hutter's
property for $30,000, such investment would yield large
returns.    It is admitted that appellant brought Mrs. Baker
and Hutter together and that on said date she signed escrow

instructions and deposited her check for $1,000 with a bank at the city of Long Beach. On September 11, 1923, the prosecuting witness delivered to the defendant another check for $1,000, upon which he wrote "For Ranch"; $2,300 was likewise given him on September 20, 1923, and on October 20, 1923, he received $800. It was testified that each such payment was solicited by Warrington and delivered to him by Mrs. Baker to be paid into the escrow or to Hutter. She averred that her experience in handling money was exceedingly limited, and that she did not know how the defendant intended to handle the payments, but that she had never given him permission to apply them otherwise than by delivery to the bank or to Hutter, and that it was immaterial to her so long as she got the land; that she "did not want him to have it for nothing." Nevertheless, that not one dollar of the moneys received by Warrington from Mrs. Baker was paid to Hutter or into the escrow, or returned to her, was established by an abundance of uncontradicted evidence. Hutter and Mrs. Baker ultimately closed the escrow, the $1,000 deposited by the latter was returned to her, and she subsequently sued the appellant for approximately $2,300 and instituted this criminal proceeding.

[1] Counsel for appellant stresses the asserted importance of a general power of attorney which appeared to have been executed to him by the prosecuting witness on May 14, 1923, giving the defendant full authority for all purposes to buy, encumber, and sell real property, as well as goods, wares, and merchandise, choses in action and other property in possession or in action. However, the power of attorney contains no reference to the transaction here involved. Mrs. Baker testified that the defendant "came to us in a great rush one day, and said he could make us a lot of money if we gave him a power"; that they proceeded to the office of a Mr. Griffith, "and he told Mr. Griffith, 'You might as well make it a power of attorney,' " that "he fixed up the power of attorney, but it was never used except to defraud us"; that a few days later she demanded it, but that appellant replied, "Oh, I tore it up." This latter statement proved to be false, since it was introduced in evidence at the trial, and appellant attempted to show that it authorized him to use the escrow moneys above mentioned as he might see fit.

We are cited to no authority, nor are we aware of any, which could be said to sanction the exercise of authority under a general power of attorney executed in May, 1923, to divert funds entrusted to an agent in confidence for a specific purpose which was limited and made definite by his principal.

The prosecuting witness testified that the defendant had never rendered her an accounting of the moneys obtained from her, nor offered to return any part of them. During her cross-examination she was shown and identified a paper which was introduced in evidence, purporting to account for various amounts paid to persons not connected with the escrow transaction. She testified that "He stayed away for a week or two, then came to the house and gave me a paper where he stated he gave Looney $3000"; that "He said, 'Now here is your paper and I am through with you. That is what I have done with the money.' I had never had any dealing with Looney or anyone." Among the items so charged to Mrs. Baker appeared $58.30 and $100 to lawyers, $20 for chicken feed, $120 for chickens, $35 for a cow, "one thousand dollars ($1000.00) to W. R. Looney . . . and twenty-three hundred dollars ($2300.00) check which was to be used in escrow or as Mr. L. B. Warrington saw fit. But was to go to Mr. W. R. Looney three thousand dollars ($3,000.00) escrow account, or he was to use his own judgment as long as it was to take care of Mr. Looney's escrow interests, with a receipt to the escrow department."

It appears at once that the defendant did not attempt to account for any money in accordance with the terms of his trust. Hutter testified that Looney had an oil lease on the property in question, but was not entitled to any money under the escrow; that Looney and others gave him a quitclaim deed to their interests on October 30, 1922, but that he subsequently discovered that they had assigned all their interests therein to Warrington, so that the quitclaim was worthless. Notwithstanding that fact, it appears that the defendant obtained the funds from Mrs. Baker upon representations that he would clear the title, and that she would lose the land if she "did not have the money to make a big payment." The defendant testified that Looney was indebted to him in a considerable amount, but admitted on cross-examination that the Baker moneys were at times paid to Looney, and at other times deposited to the defendant's

personal account in a bank as a credit against the Looney debt to himself.

[2] Objection was repeatedly interposed by the defendant to the Baker checks being offered in evidence, upon the ground that they were not "lawful money of the United States," which he was charged with having obtained from her. Such objections were overruled, and the action of the trial court is here assigned as prejudicial error, but there is no merit in this contention. The checks were drawn upon Mrs. Baker's account in the bank which held the escrow, and were cashed by Warrington. He does not argue that he expended approximately $4,100 in lawful money of the United States belonging to Mrs. Baker, "as Mr. L. B. Warrington saw fit," nor that he availed himself of the most effective, though meretricious, methods of obtaining it, but the jury were warranted upon the evidence before them in concluding that such was the fact.

Several other real estate transactions of Mrs. Baker were injected into the defense, and she was interrogated about them on cross-examination, obviously for the purpose of showing that some of her money was expended in connection therewith. However, the terms of his trust did not permit of such expenditures, and Mrs. Baker testified that she had never had any other dealings with the defendant.

A $500 check was also offered in evidence by the defendant, which amount he contended he had paid to Mrs. Baker. But she denied that she received any money from him, and swore that she deposited money in the bank for Warrington, and gave him a check; that she later drew the money and delivered it to him in person, and that he then handed to her the check in question.

[3] The greater portion of appellant's alleged grievances as argued at the time of the trial, and advanced here as grounds for reversal, consists of criticisms of witnesses for the people and of sharp conflicts between their evidence and that of the defense. An appellate tribunal, however, is not authorized to discredit testimony which, by their verdict, a jury has indicated that they believe to be true. As recently said by this court, in passing upon the sufficiency of the evidence we must consider in its strongest light all evidence tending to support the verdict, and disregard such

conflicting evidence as is inconsistent with the jury's decision.

[4] It having appeared during the trial that Mrs. Baker had filed a civil suit for the moneys herein mentioned, defendant's counsel sought to examine her regarding such civil proceedings, to which the district attorney objected upon the ground, among others, that no proper foundation had been laid. The objections were sustained. Thereupon counsel for the defendant offered the judgment-roll, and read the verification to the complaint contained in it, but objections were sustained against his attempts to secure admittance of this evidence in the manner indicated, the court basing its rulings upon the ground that no proper foundation had been laid. Defendant's counsel indicated the purpose of these questions to be to show contradictory statements of the witness. Obviously the method of impeachment prescribed by section 2052 of the Code of Civil Procedure where the alleged impeaching statement is contained in a writing was not followed. The witness should have been shown the writing before any question was put concerning it. The objections were therefore properly sustained.

[5] It is argued that the defendant was prejudiced by the admission of the original escrow instructions in evidence, but he later admits that he was "not seriously prejudiced" thereby, although he was not a party to them and did not know their contents. They were offered by the district attorney, and at first admitted, for the purpose of showing that Looney was not mentioned in, nor a party to, the escrow. During the argument the district attorney was permitted to read and discuss some of the terms of the escrow agreement. This was objected to at the time, and is assigned as error. It appears that the defendant caused the parties to execute such agreement, and obtained money from Mrs. Baker to apply thereon, but later insisted that he was authorized to and did apply the money as he saw fit. The court had previously ruled that either party might read from the documents in evidence, and it seems eminently desirable that the jury should understand the whole transaction. It was incumbent upon the prosecution to prove the offense charged, and if Mrs. Baker was induced to enter into a contract with Hutter, with which Looney had no connection, and the defendant was paying to Looney

money which it was intended that he should apply on the Hutter sale to Mrs. Baker, the escrow agreement and instructions, together with the report of the bank, constituted material evidence tending to show what was required and that no such amounts were received by the latter. The terms of the escrow agreement were not in themselves in any way prejudicial to the defendant, and being material, it was not error for the district attorney to discuss and explain them in his argument to the jury.

[6] Mrs. Baker testified that the $800 check was given to Warrington in the same transaction and that she had no other dealings with him. Upon her cross-examination she was asked if as a matter of fact she did not give him said check to be applied on a Texas oil deal. She replied that she did not hear of the Texas land until after the defendant had received the $800. She was then asked what she heard about the Texas deal, to which an objection that it was not proper cross-examination was sustained. There was no error in the ruling last mentioned.

[7] During the direct examination of the defendant a juror asked him why Looney should receive the Baker money, to which he replied that Looney had expended $7,500 on the property. The witness was then interrupted by an objection of the district attorney that it was immaterial, but that he would later show the connection, and such objection was sustained. It appears that the prosecuting witness was subsequently called and testified that Looney had never been mentioned to her in connection with the transaction. It is argued here that to sustain the objection amounted to a ruling that inasmuch as the evidence sought by the juror was immaterial the defendant's acts were not justified, and that the case was decided by the court.

We think the defendant was entitled to testify fully to his theory of the transaction, and to give his reasons for evading or varying the alleged trust agreement between himself and Mrs. Baker. However, both prior to and succeeding the ruling in controversy the defendant and his witnesses testified extensively, and documentary evidence was introduced, as to the general power of attorney, as to other realty transactions of Mrs. Baker, and the disposition of the moneys, and the defendant had ample opportunity to, and apparently did,

state his reasons for each of his acts, which the evidence of the prosecution flatly and unqualifiedly denied. It was, therefore, for the jury to believe either contention which, from all the evidence before them, seemed to have been established. Hence, we do not deem the error to have been of appreciable consequence or sufficient to justify a reversal, even if we concede for the sake of argument that there was error.

[8] As heretofore stated, the indictment contained ten counts. The defendant at various stages of the trial sought to compel the district attorney to elect upon which counts the people would rely, but the court below denied each motion, and the rulings in that regard are assigned as prejudicial error. Section 954 of the Penal Code expressly provides that two or more different offenses connected together in their commission, or different statements of the same offense, may be charged under separate counts, and that the prosecution is not required to elect between them.

Other points argued are obviously so untenable that we deem it wholly unnecessary to discuss them. The jury were fully instructed upon the credibility of witnesses, and as to the constituents of embezzlement and grand larceny. [9] They were charged that "when, by means of fraud or artifice, or any other kind of contrivance, the possession of property is fraudulently obtained from another, and the party obtaining this possession acquires it by means of this fraud or artifice, with the felonious intention of stealing it when he gets possession of it, then the crime is larceny, provided that the owner" retains title thereto. Under this proper statement of the law the facts as delineated by the People's witnesses justified the verdict rendered by the jury. (*People* v. *Raschke,* 73 Cal. 378 [15 Pac. 13]; *People* v. *Arnold,* 20 Cal. App. 35 [127 Pac. 1060]; *People* v. *Knox,* 32 Cal. App. 158 [162 Pac. 407]; *People* v. *Dye,* 29 Cal. App. 169 [154 Pac. 875].)

The judgment and order appealed from are affirmed.

Works, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 6, 1927, and a peti-

tion by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 3, 1927.

Shenk, J., dissented.