[Civ. No. 14782.   Second Dist., Div. Three.   July 31, 1945.]

NAT FRANK, Respondent, v. REPP & MOTT (a Corporation), Appellant.

F. A. Knight for Appellant.

Fred M. Riedman and Clock, Waestman & Clock for Respondent.

WOOD (Parker), J.—Plaintiff owned and operated a retail furniture store. Defendant Muir had been employed by him as a truck driver to deliver furniture. Repp & Mott, a corporation, hereinafter called the defendant, operated an auction business in which furniture and other articles, re-

ceived from stores and individuals, were sold at public auction on a commission basis. At various times Muir had stolen furniture from plaintiff's store and delivered it to defendant which sold it at auction to various persons. In a jury trial of this action for damages for conversion of the furniture, the plaintiff obtained judgment for $1,500 damages and $300.12 interest. Defendant appeals from the judgment.

Defendant asserts that the court erred in instructing the jury to return a verdict against defendant. After the evidence had been presented and before the arguments were made, the trial judge stated to the jury: "I think I might as well state to the jury what I have stated there so they can follow the argument. I stated to counsel here that I was prepared to instruct the jury that there is no conflict of evidence as to the matters on which liability is founded, and therefore, I will instruct the jury at the proper time, that there is liability on the part of Repp & Mott, a corporation, as a matter of law, and the only thing the jury needs to determine is the reasonable value of the furniture and furnishings. I think that will simplify your work and will simplify the argument, so we will proceed to the argument if you wish, but it will be confined to the question of the value of the furniture." After the argument the court instructed the jury: "You are also instructed to return a verdict in favor of the plaintiff and against the defendant Repp & Mott, a corporation. The amount of the award is for you to determine. The amount of the award will be the fair wholesale market value F. O. B. Long Beach, Calif. of the goods belonging to the plaintiff which you find that the defendant Paul S. Muir took without the consent of the plaintiff and delivered to the defendant Repp & Mott, a Corporation, and which were sold by said corporation. . . . The amount of the note which the defendant Muir gave to the plaintiff is not to be credited by you on the amount you find to be the value of said goods." The jury was also instructed that: "The plaintiff has the burden of proving by a preponderance of the evidence what goods belonging to him were taken by the defendant Muir without plaintiff's consent and sold by the defendant Repp & Mott, a corporation. The plaintiff also has the burden of proving by a preponderance of the evidence what was the value of the goods so sold." Defendant had furnished to

plaintiff a list of property which it had sold for Muir during the time from April 2, 1941, to August 13, 1941, (the time involved herein). Muir testified, by deposition, that the property described on that list had been stolen by him from plaintiff and had been sold by defendant. Mr. Mott testified that he went over the list with Muir and Muir said there were several articles thereon which did not come from plaintiff's store and pointed out those articles on the list; that he (Mott) could not designate the articles which were so referred to, but he knew that Muir said that two of those articles, a radiant heater and a range, did not come from plaintiff's store. It was established by uncontradicted evidence that defendant was liable to plaintiff for the goods which were stolen by Muir and sold by defendant. The court left it to the jury to determine what goods were so stolen and sold. It was not error to instruct the jury that there was liability on the part of defendant.

Defendant asserts further that the court erred in instructing the jury that ''The amount of the note which the defendant Muir gave to the plaintiff is not to be credited by you on the amount you find to be the value of said goods.'' His argument is that it was a question of fact for the consideration of the jury as to whether the $750 note was given and received in payment or part payment of plaintiff's claim. Plaintiff asserts that the note was not taken in payment or partial payment, but was only to be used as part payment in a contemplated compromise which was not consummated.

Plaintiff prepared in his handwriting a promissory note for $750, dated December 11, 1941, payable to himself in annual payments of $375 each, the first payment being due December 11, 1942, and Muir took the note and signed it as the maker. Plaintiff testified that ''he didn't believe that Muir signed it in his presence.'' Muir testified that he signed the note in the presence of plaintiff. Muir gave the note to a person who was a truck driver for defendant, and that driver gave it to defendant.

Mr. Aspinwall, who had been the attorney for defendant, testified that while he was such attorney he received a telephone call from Mr. Riedman, who was attorney for plaintiff at that time, in which Riedman asked him to bring Muir's promissory note to his office; that he asked Riedman what note he was referring to and Riedman replied, ''The note of Paul Muir for Nat Frank''; that he asked Riedman if there

was such a note and Riedman said that defendant had it; that he went to the office of defendant and obtained the $750 note which had been signed by Muir; that he took the note to Riedman's office and placed it on his desk or handed it to him, and Riedman held the note and looked at it; and that he left the note with Riedman.

Mr. Riedman, who was one of the attorneys for the plaintiff at the time of the trial, testified that in a telephone conversation with Aspinwall they discussed the $750 note and that he told Aspinwall that plaintiff would settle the claim on the basis of defendant paying $1,050 and Muir giving a note for $750, and that his client had told him that Muir had made such a note; that he (Riedman) told his client (plaintiff) to give the note to defendant and that when the entire matter was straightened out they would take the note and a check and give the releases; that it was stated between them (Riedman and Aspinwall) in one of their conversations that Aspinwall was to get the note and defendant's check for $1,050, that he (Riedman) was to prepare the releases, and that the note and check would be exchanged for the releases; that Aspinwall came to his office with the note and handed it to him or laid it on his desk; that he asked Aspinwall where the check was; that he did not remember his answer; that he told Aspinwall that he had no authority to accept the note until the entire matter was settled, and that he had no use for the note; and that when he offered to return the note to Aspinwall he did not take it, but "he ran like a scared jackrabbit."

Mr. Aspinwall testified on redirect examination that there was "No conversation in which there was any agreement relating to the giving up the note and the check for $1,050.00"; that he told Riedman, "you have gone behind our backs to settle with this man and taken a note without our knowledge in this matter of settlement and there will be no check—we will not have anything further to do along that line"; that he saw a release when he was in Riedman's office; and that he did not run out of the office.

On May 12, 1942, Muir signed a written statement regarding the note. That statement, offered in evidence by defendant and received, was as follows: "Paul S. Muir voluntarily makes the following statement regarding the promissory note dated December 11, 1941, in the sum of $750.00, payable to Nat Frank, a photostatic copy of which is attached hereto.

That on or about the date of said note, Nat Frank requested me to come to his place of business in the City of Long Beach, California, which I did. At that time we discussed certain furniture, household furnishings and personal property which he accused me of having sold, through the auction house of Repp & Mott, and said Frank demanded that I give him a promissory note in payment of the value of the same. We discussed at some length the value of the furniture and finally he presented me with the said note and I then and there signed the same and delivered it to Nat Frank upon his stating to me that he would not prosecute me nor hold me liable in any manner for taking the goods except by the payment of the note. At that time I stated to Nat Frank the full value of said goods, and thereupon Nat Frank asked that I deliver said promissory note to Repp & Mott, but did not state to me why I was to take the note to Repp & Mott. No one was present at this conversation except ourselves. A few days after receiving this note from Nat Frank I delivered the note to a man whose name I do not know but who was a driver of one of the Repp & Mott trucks, and I requested him to hand the note to Repp & Mott.''

On January 12, 1943, Muir wrote a letter to Mr. Aspinwall regarding the note. That letter, offered in evidence by defendant and received, was as follows: ''Dear Sir, Received your letter. Very sorry that you were unable to see me. Sorry I haven't sent you my new address. Well, there isnt much I can write about, as I told you on phone Mr. Frank wrote me several time more or less I think just to see if I were still here. he had very little to say about case, but he though that it would come up soon, he never has mention fact that he has sue me for any amount, other than the note, which I sgin, Seem to be kind worried about that note, some what, of course, I never ask him why, as far as every collect, more than $750.00 I think he kind crazy. I cann seem find letter from Mr. Reedman but here one of Mr. Frank letter, they are about all same. As far as he, can expect to, sue me he crazy after sgin Note for every cent I owe him then turn around, and file for three time the amount will kill that, very quick, Well if there any news. Please let me know, Your Truly, . . .''

Muir was not present at the trial but he testified by deposition that he gave the note for every cent that he owed the plaintiff.

The note was produced at the trial by the plaintiff. It was

offered in evidence by defendant and was received in evidence over the objection of plaintiff. Muir's deposition, which was read in evidence, was offered by plaintiff.

At the time the note was made it was not delivered by Muir to plaintiff, but was delivered on a later day to defendant. The circumstances under which the note was left with plaintiff's attorney did not show that it was retained as payment or part payment of the amount due plaintiff. There was no express agreement or any agreement that the note was taken or was to be taken in payment or part payment. No part of the note was paid. ■ When a note is taken for a preexisting debt, it is not payment of the debt unless there is an express agreement to that effect; the presumption is that such a note was not taken in payment, and the burden of showing that it was in payment is upon the maker. (See *Selig Cahn, Inc.* v. *California W. Co.*, 9 Cal.2d 617, 619 [71 P.2d 1113].) ■ The evidence showed that plaintiff would have been willing to accept Muir's note for $750 and defendant's check for $1,050 in settlement of his claim, but the check was not offered to plaintiff and the contemplated compromise was never consummated. Although Muir testified at length by deposition and was cross-examined by defendant's counsel, he did not testify that the matters contained in his written statement, above quoted, and his letter, above quoted, were true, except he did testify that he had given the note for every cent he owed the plaintiff. He did not testify as to any conversation with plaintiff concerning the purpose in giving the note. The testimony of plaintiff was that the note was never handed to him and that he did not accept it or intend to accept it as payment or part payment of the obligation of Muir and defendant to reimburse him for the goods. The evidence was not sufficient to support a finding that the note was given in payment or part payment of the indebtedness, or to support a finding that plaintiff released Muir or the defendant from the obligation. It was not error to instruct the jury not to credit the amount of the note on the amount found to be the value of the goods.

■ Defendant contends further that the court erred in instructing the jury that it should consider, as expert testimony, the testimony of plaintiff as to the value of the furniture. During the trial when plaintiff was a witness the following proceedings were had: ''Q. [by counsel for plaintiff] In

Plaintiff's Exhibit 2, it shows the first sale made was 4-2-41 and the last one made was 8-13-41. Will you give us the reasonable market value for those goods in this locality, laid down at your store on those dates? Mr. Knight [counsel for defendant] : We object to the question as no foundation being laid. That calls for a conclusion of the witness and no qualification of the witness shown. The Court: Objection overruled. Q. Answer the question. The Court: The owner can testify to the value of the goods—— The Witness: Yes, sir. Q. What is the value? A. $1,800.00.'' The court gave the following instruction: ''The rules of evidence ordinarily do not permit the opinion of a witness to be received as evidence. An exception to this rule exists in the case of expert witnesses. A person who by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his opinion as to any such matter in which he is versed and which is material to the case. In this case, the plaintiff gave his opinion as to the value of the property in question. You should consider such expert opinion and should weigh the reasons, if any, given for it. . . .'' It appears that the court, in receiving plaintiff's testimony as to value of the furniture, limited his testimony to his opinion as the owner of the furniture. The plaintiff had testified that he had been in the furniture business since 1921 and that he had familiarized himself with the values of furniture. He testified that he arrived at the amount, $1,800, by going over the list of stolen articles with Mr. Mott and Mr. Repp and that he checked the list from his inventory. It appears that plaintiff was qualified to testify as an expert. No evidence as to value of the furniture was introduced by defendant. The instruction wherein plaintiff's testimony was referred to as that of an expert was not prejudicial.

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.