[Civ. No. 6089.    Fourth Dist.    Mar. 9, 1961.]

JESS H. YOUNG AND SON, INC. (a Corporation), Appellant, v. VICTORY TOOL AND DIE COMPANY, INC. (a Corporation), Respondent.

Truman F. Campbell and James R. Walton for Appellant.

Avery, Meux & Gallagher and John H. Baker for Respondent.

COUGHLIN, J.—This is an appeal from a judgment in a claim and delivery action by the owner of a cotton-picking machine against an artisan who held the same under a claim of lien for repairs. The court found the existence of such a lien in the sum of $2,107.11. Judgment was entered accordingly.

Sometime in November 1958 Nolan Wade, who was in possession of the cotton picker as a purchaser thereof under a contract of sale from the plaintiff company, the appellant herein, took the machine to the defendant company, the respondent herein, for an overhaul job. For a period of approximately a year and a half before this time Wade had been a customer of the defendant company; had the picker in the defendant's shop for repairs on four or five occasions during this period; also had the defendant repair other equipment; and had a running account with the defendant to cover the charges made for such repairs. During all of this time Wade was the possessor of this machine under conditional sales contracts. However, the owner of the legal title thereof was not always the same. The plaintiff became owner of the cotton picker in September 1958 and under date of September 9,

1958, executed a conditional contract of sale therefor with Wade which entitled the latter to retain possession of the machine.

Evidence of the account between Wade and the defendant shows a debit entry on June 12, 1958, together with subsequent debit and credit entries up to December 19, 1958, at which time the balance due defendant amounted to $2,698.86. It was shown that some of the charges appearing on this account were not for repairs to the cotton picker. At no time during this period was Wade's account with the defendant paid in full. It appears, however, that the defendant did not have continuous possession of the cotton picker during the whole of this period; that it was being used by Wade; and was in defendant's shop when being repaired.

The cost of the November overhaul job, which is evidenced by an entry and invoice dated November 20th, was the sum of $2,060.07. Although Wade was unable to pay for these repairs at that time, the picker was released to him so that he might take it to Arizona to do some custom cotton-picking work. The evidence with respect to this matter is contained in the following testimony of the general manager of the defendant company:

"He [Wade] brought the picker into our shop to have it overhauled prior to going to Arizona so that he would have no trouble with the machine while there. He told us he was unable to pay the bill at the time. He would give us a note if we would release his machine to him, and he would then deliver the machine back to us *for further repairs* after he returned from Arizona, and also would pay off the note." (Emphasis added.)

Wade signed the note in question. It was dated November 20, 1958; provided for the payment of $2,060.07 on or before December 15, 1958, together with interest at 6 per cent per annum in the event payment was not made by December 1, 1958; and also provided for the payment of attorney's fees and court costs in the event action was instituted on the note. Both Wade and the defendant's general manager testified that this note was given and received in payment of the overhaul work on the picker for which Wade was charged $2,060.07. Upon receipt of the aforesaid note the defendant released the picker to Wade who took it to Arizona, and subsequently returned it to the defendant's shop. Thereupon the defendant dismounted the picker; converted its tractor to

field use; and, under date of December 19th, entered a charge of $41.94 on Wade's account for this work.

In the meantime, Wade had not made any of the payments due under his contract of sale with the plaintiff. Thereupon the plaintiff undertook to repossess the property which he had sold to Wade, including the cotton picker in question, and discovered that this piece of equipment was in possession of the defendant company, which was claiming a lien thereon for $2,698.86 under the provisions of section 3051 of the Civil Code. The plaintiff had no knowledge that the defendant had been doing any work upon the picker. The defendant had no knowledge that the plaintiff was the legal owner of the picker. The plaintiff offered the defendant $100, contending that any lien claimed by the defendant in excess of that amount was invalid under the existing provisions of section 3051a of the Civil Code. (§ 3051a was amended later in 1959.) The defendant refused this offer and retained possession of the picker.

The instant action ensued. The trial court determined that the defendant had a statutory lien upon the machine in the sum of $2,107.11 which is a composite of the $2,060.07 overhaul job, the $41.94 dismounting work, and a $5.10 item which cannot be identified from the evidence.

The primary question on appeal is whether, as against the plaintiff, the defendant's relinquishment of the cotton picker to Wade terminated its statutory lien for services rendered and material furnished in connection with the overhaul job.

The provision of section 3051 of the Civil Code upon which the defendant's claim of lien is based reads as follows:

". . . a person who makes, alters, or repairs any article of personal property, at the request of the owner, or legal possessor of the property, has a lien on the same for his reasonable charges for the balance due for such work done and materials furnished, and may retain possession of the same until the charges are paid, . . ."

The lien so created is dependent upon possession of such property by the lien claimant (*Belknap* v. *Mitchell*, 217 Cal. 377, 380 [18 P.2d 929]; *Quist* v. *Sandman*, 154 Cal. 748, 754-757 [99 P. 204]; *Bogue* v. *Roeth*, 98 Cal.App. 257, 261 [276 P. 1071]; *Lundblade* v. *Pierce*, 95 Cal.App. 192, 194 [272 P. 329]); terminates when possession is voluntarily relinquished (*People* v. *Photo*, 45 Cal.App.2d 345, 354 [114 P.2d 71]; *Covington* v. *Grant*, 82 Cal.App. 749, 751 [256 P.

213] ; *Davis* v. *Young,* 75 Cal.App. 359, 364 [242 P. 743]) ; and is not revived upon regaining possession (*Covington* v. *Grant, supra,* 82 Cal.App. 749, 750; *Davis* v. *Young, supra,* 75 Cal. App. 359, 364; *cf. Kirkman Corp.* v. *Owens,* 62 Cal.App.2d 193, 199 [144 P.2d 405]), except in those instances where the property is released to its owner upon agreement that the lien will be revived when possession is returned to the lien claimant. (Civ. Code, § 2913.) Even in the latter instance the lien is not revived as to "creditors of the owner and persons, subsequently acquiring a title to the property, or a lien thereon, in good faith, and for value." (Civ. Code, § 2913.)

■ The relinquishment of the repaired property to a vendee under a conditional contract of sale upon condition that it be returned subject to the lien, without a concurring agreement by the owner thereof, is not within the exception. ■ The reacquisition of possession of property subject to a lien by a lien claimant after its surrender to such a vendee, even though under agreement with the vendee to return it for lien purposes, does not revive the lien as against the vendor, the real owner. (*Covington* v. *Grant, supra,* 82 Cal.App. 749, 751; *Davis* v. *Young, supra,* 75 Cal.App. 359, 364; *Goodman* v. *Anglo-California Trust Co.,* 62 Cal.App. 702 [217 P. 1078] ; *cf. C.I.T. Corp.* v. *Biltmore Garage,* 3 Cal.App.2d Supp. 757, 761 [36 P.2d 247].)

■ Under the rule as stated, any agreement between the defendant and Wade, with respect to the effect of the release of the cotton picker upon the defendant's lien, would not be binding upon the plaintiff; the release of the picker terminated any lien in favor of the defendant as against the plaintiff; and the resumption of possession, although under agreement with Wade, did not revive the lien as against the plaintiff.

■ Furthermore, the evidence is not sufficient to sustain a finding that the release of the picker to Wade was under such conditions as would revive the lien when possession was restored in the defendant. The testimony on this subject, which was given by the defendant's general manager and heretofore noted, was that Wade would deliver the machine back "for further repairs" after he returned from Arizona; that he would give the defendant a note if it released the machine to him; that when he returned he would pay off the note; and that upon execution of this note the machine was released to him. The evidence sustains a finding that Wade

was "supposed" or intended to bring the picker back to defendant's shop upon his return from Arizona, but does not sustain a finding that the lien was to be revived upon the happening of such an event, or that the release of the machine to him was conditioned upon such return. There was no discussion between the parties about the lien. Wade gave the defendant his promissory note which he and defendant believed was in payment of the $2,060.07 overhaul job. Although, under the circumstances of this case, the court was not required to conclude that this note was accepted in lieu of the preexisting debt (*American Marine Paint Co.* v. *Tooley,* 53 Cal.App.2d 530, 538 [127 P.2d 960]; *Frank* v. *Repp & Mott,* 70 Cal.App.2d 407, 413 [161 P.2d 279]), and was entitled to find that acceptance of the note did not extinguish the lien (*Sibley Grading etc. Co., Ltd.* v. *Crary,* 4 Cal.2d 375, 379 [49 P.2d 823]), the evidence does not support a conclusion that the defendant's relinquishment of possession was made upon any condition other than the execution of said note. Termination of its lien followed as a matter of law.

In holding that the defendant was entitled to a lien upon the cotton picker for the work and materials involved in the overhaul job, the court erred.

The judgment is reversed with instructions to the trial court to set aside the findings and judgment herein; to conduct such further proceedings as may be proper; and to enter judgment in harmony with the views expressed in this opinion and in accordance with the law and the facts in the premises.

Griffin, P. J., and Shepard, J., concurred.