**OZARK FINANCIAL SERVICES, A DI-VISION OF OZARK KENWORTH, INC., Plaintiff-Appellant,**

v.

**Lonnie TURNER and Patsy Turner, Defendants,**

v.

**PETE & SONS GARAGE, INC., Intervenors-Respondents.**

No. 14952.

Missouri Court of Appeals, Southern District, Division Two.

June 25, 1987.

Motion for Rehearing or Transfer Denied Aug. 5, 1987.

Application to Transfer Denied Sept. 15, 1987.

Mark E. Fitzsimmons, Janet S. Garrett, Fitzsimmons & Schroeder, Springfield, for plaintiff-appellant.

Robert W. Stillings, Springfield, for intervenors-respondents.

MAUS, Judge.

This action commenced by appellant Ozark Financial Services filing a petition to replevin a tractor truck unit from the possession of Lonnie Turner and Patsy Turner. The petition alleged the appellant was entitled to possession of the vehicle by reason of the Turners' default under a security agreement-retail installment contract dated April 25, 1985. Pete & Sons Garage, Inc., was permitted to intervene and assert an artisan's lien for labor and material furnished in repairing the vehicle. The disposition of the case by the circuit court included a judgment in favor of the intervenor and against appellant in the amount of $2,693.91. The appellant seeks the reversal of that judgment.

The petition of intervenor was in two counts. Count I sought recovery upon the basis of a common law artisan's lien. Count II asserted a statutory lien under § 430.020. The circuit court entered judgment in favor of intervenor upon Count I. The appellant contends this was error. It also contends the circuit court correctly dismissed Count II. The following is a brief summary of the salient facts.

The issue date of the title to the vehicle was October 4, 1984. Appellant was shown as a lienholder. The security agreement under which appellant obtained possession was dated April 25, 1985. The repairs were made in June, 1985. When the repairs were completed, the vehicle was returned to the possession of the Turners. It was returned upon a verbal agreement that if the Turners could not pay for the repairs, they would return the vehicle to the intervenor. The vehicle remained in the possession of and was used by the Turners until the latter part of November, 1985. It was then returned to intervenor. At that time, a writing was prepared reciting in lay language the verbal agreement referred to above. Under a writ of replevin against the Turners, the sheriff took the vehicle from the intervenor and delivered it to appellant. See *State ex rel. Rueseler Motor Co. v. Klaus,* 263 S.W.2d 71 (Mo.App.1953).

In the circuit court, as in this court, it was appellant's position intervenor lost its common law artisan's lien when it surrendered possession of the vehicle to the Turners. Intervenor contended its lien was not lost because the vehicle was delivered to the Turners subject to the condition of the verbal agreement. Intervenor relied upon the following expression. "As a general rule a lien dependent on possession is waived or lost by the lienholder voluntarily and *unconditionally* parting with possession or control of the property to which it attaches." *Hughes v. Aetna Ins. Co.,* 261 S.W.2d 942, 951 (Mo.1953) (emphasis added). This language is found as dictum in several Missouri cases. See *Jackson v. Kusmer,* 411 S.W.2d 257 (Mo.App.1967).

However, the general rule applicable to the common law lien has been stated as follows. "Being dependent upon possession, the common law lien is lost if the lienholder voluntarily parts with possession of the vehicle." *Lamke v. Lynn,* 680 S.W.2d 285, 288 (Mo.App.1984). Also see *Jordan v. Davis,* 538 S.W.2d 595 (Mo.App. 1976); *Davis v. Nash Central Motors,* 332 S.W.2d 475 (Mo.App.1960); *Gale and Company v. Hooper,* 323 S.W.2d 824 (Mo.App. 1959); *State ex rel. Rueseler Motor Co. v. Klaus,* supra; *Bostic v. Workman,* 224 Mo.App. 645, 31 S.W.2d 218 (1930). That rule is followed in many jurisdictions. *Parks v. "Mr. Ford",* 386 F.Supp. 1251 (D.C.Pa.1974); *Ray Hughes Chevrolet, Inc. v. Gordon,* 294 Ala. 638, 320 So.2d 652 (1975); *Jess H. Young and Son, Inc. v. Victory Tool and Die Co.,* 189 Cal.App.2d 824, 11 Cal.Rptr. 516 (1961); *Hendrickson & Sons Motor Co. v. Osha,* 165 Ind.App. 185, 331 N.E.2d 743 (1975); *General Motors Acceptance Corp. v. Colwell Diesel S. & G., Inc.,* 302 A.2d 595 (Me.1973), 69 A.L. R.3d 1153 (1973); *Patapsco Trailer S. & S., Inc. v. Eastern Freightways,* 271 Md. 558, 318 A.2d 817 (1974); *Johnson v. Wamble,* 205 So.2d 921 (Miss.1968); *Windsor Contracting Corp. v. Budny,* 93 N.J.Su-

per. 235, 225 A.2d 596 (App.Div.1966); *Rochester Production Credit Ass'n v. Dickens Bros., Inc.*, 39 Misc.2d 847, 242 N.Y.S.2d 309 (1963); *Wat Henry Car Leasing v. Oliver*, 550 P.2d 995 (Okl.App.1976); *Welcome Home Center v. Central Chevrolet Co.*, 272 S.C. 166, 249 S.E.2d 896 (1978); *Garcia v. Rutledge*, 649 S.W.2d 307 (Tex. App. 7 Dist.1982); *Atlas Amalgamated, Inc. v. Castillo*, 601 S.W.2d 728 (Tex.Civ. App.1980); *Burns v. Miller*, 42 Wash.App. 801, 714 P.2d 1190 (1986).

■ There may be circumstances in which a common law lien is not lost by a brief, temporary conditional use of a vehicle by an owner. See *Jackson v. Kusmer*, supra; *Smith v. Cooper Chevrolet, Inc.*, 404 So.2d 49 (Ala.1981); *Barbre-Askew Finance v. Thompson*, 247 N.C. 143, 100 S.E.2d 381 (1957); *Associates Commercial Corp. v. Francisco*, 667 S.W.2d 481 (Tenn.App.1983). However, this case does not require a determination of whether or not in this state there are exceptions to the general rule as stated above. The return of the vehicle for the use of the Turners until it was determined the Turners could not pay for the repairs terminated the common law lien.

Appellants' second point is that the circuit court did not err in dismissing intervenors' Count II asserting a statutory lien. This point is supported by the following argument in appellant's brief.

> By its own admission Respondent Garage acknowledges that the conditions for release of the vehicle to Respondent Turner were not reduced to writing until some time after the truck was released to Respondent Turner. Respondent Garage attempted to create a statutory lien, but failed to do so, since the written memorandum (agreement) was obtained long after Respondent Garage had voluntarily given up possession of the vehicle to Respondent Turner. Clearly, then, the Court did not err in determining that Respondent Garage had no statutory line [sic] on The 1980 Kenworth K100 tractor truck.

This argument refers to Exhibit C, the agreement prepared when the vehicle was returned to intervenor. The appellant's failure to take cognizance of Exhibits A and B demonstrates the decisiveness of those exhibits.

■ Exhibit A is dated June 18, 1985. It is on a printed form, a portion of which is obscured by an identification sticker. However, the legend before the signature line begins "I hereby authorize the...." The unobscured balance of the legend makes clear it provides an authorization of the repairs shown on that form. Exhibit B is also on a printed form and lists vehicle parts not shown on Exhibit A. Exhibit B is dated June 21, 1985. The exhibits were identified as correctly showing "the work and labor and materials that were expended in repairing the truck." Each exhibit was signed. They total $2,693.91. The exhibits were admitted without objection. The exhibits are a written memorandum of the work or materials furnished or to be furnished upon the vehicle. § 430.020.

Section 430.020 provides for a statutory lien for such labor and material.

The enactment of the statutory artisan lien did not destroy the common law lien of an artisan who furnished labor or material in the repair of a vehicle while he was in possession of it. *McCluskey v. De Long*, 239 Mo.App. 1026, 198 S.W.2d 673, 675 (1946). Being dependent upon possession, the common law lien is lost if the lienholder voluntarily parts with possession of the vehicle. *State ex rel. Rueseler Motor Co. v. Klaus*, 263 S.W.2d 71, 72 (Mo.App.1953). However, the purpose of Sections 430.020 and 430.040 is to give the artisan a lien that he did not have at common law, in that if he secures a written memorandum from the owner then the writing will continue the lien after the artisan has parted with its possession providing a purchaser or other person takes possession with notice of the lien claim.

*Lamke v. Lynn*, supra, at 288. Also see *Mack Motor Truck Corporation v. Wolfe*, 303 S.W.2d 697 (Mo.App.1957); *State ex rel. Rueseler Motor Co. v. Klaus*, supra; *Bostic v. Workman*, supra. The general subject is discussed in Lambert, The Liens

Available To A Garage Man, 30 U.Kan.C.L. Rev. 3 (1962).

To determine the priority of the statutory lien with respect to an existing security interest, § 430.020 must be read with § 430.040. *Jackson v. Kusmer*, supra. Section 430.040.2 in part provides:

> The lien shall be valid against the vehicle ... in the possession of any person receiving or purchasing the same, with notice of the lien claim; but the lien shall not take precedence over or be superior to any prior lien on the property, created by any financing statement on the same, duly perfected in accordance with the laws of this state, without the written consent of the secured party or the legal holder of the security agreement.

The relative status of the statutory lien and an existing security interest has been succinctly declared.

> [O]ur three courts of appeals have unanimously held, and still do, that the enactment of Sections 430.010–430.050, V.A. M.S., creating the statutory lien, did not destroy or affect the Missouri artisan's commonlaw lien.... Furthermore, the statute, Section 430.040, contains *no reference* to priority except its provision that the lien it creates shall not take precedence over the lien of a chattel mortgage (and, by analogy, a conditional sales contract) '*duly filed or recorded in accordance with the laws of this state, without the written consent of the mortgagee or the legal holder of said chattel mortgage.*'
>
> We are not required to decide whether the *Kirtley* [*v. Morris*, 43 Mo.App. 144 (1890)]; *Stone* [*v. Kelley*, 59 Mo.App. 214 (1894)]; *Lazarus* [*v. Moran*, 64 Mo. App. 239 (1895)]; and *Birmingham* [*v. Carr*, 196 Mo.App. 411, 414, 197 S.W. 711, 712[1–3] (1917)] cases remain in such force and effect, despite Sections 430.010–430.050, V.A.M.S., creating the statutory lien, that an artisan's common-law lien for repairs is still to be granted priority over a chattel mortgage 'duly filed or recorded in accordance with the laws of this state.' We deal here with a Florida conditional sales contract, never

filed or recorded in this state. The meaning of those decisions was that an artisan's common-law lien took priority over all earlier mortgages recorded in this state, or elsewhere, and by analogy, over all conditional sales contracts occupying the same status. The only limitation on priority of the statutory lien was that it should not take precedence over a chattel mortgage and, by analogy, a conditional sales contract, 'duly filed or recorded in accordance with the laws of *this* state.' This is the extent to which the General Assembly chose to go. It went no further.

*Mack Motor Truck Corporation v. Wolfe*, supra, at 700 (emphasis in original). Also see *Jackson v. Kusmer*, supra.

■ As stated, the appellant replevined the vehicle upon the basis of a security agreement dated April 25, 1985. Its claim to the vehicle was based upon a security agreement predating the repairs in question. The appellant is a Missouri corporation. The security agreement recites the Turners' chief place of business is in Omaha, Nebraska, and the tractor would be titled in Nebraska. However, it lists their residence as West Plains, Missouri. The security agreement further declares it was entered into in Missouri and will be governed by its laws. For a reason not apparent, the vehicle was titled in Illinois. The lien of the security agreement dated April 25, 1985, was not shown upon the face of that title. The lien of that security agreement was not "duly perfected in accordance with the laws of this state" within the requirements of §§ 301.600 to 301.660 and §§ 400.9–101 to 400.9–507. The lien of appellant was inferior to the statutory lien of intervenor. *Jackson v. Kusmer*, supra; *Mack Motor Truck Corporation v. Wolfe*, supra.

■ The court takes cognizance of the fact the plaintiff did not appeal from the dismissal of Count II. Generally, review is limited to allegations of error made by an appellant. *Jones v. Anderson*, 618 S.W.2d 252 (Mo.App.1981). However, the two counts were in the alternative. They "were only different ideas of the pleader

for recovery on the one single matter involved." *Weir v. Brune*, 364 Mo. 415, 262 S.W.2d 597, 600 (1953). When a cause of action has been so pleaded, for the purpose of appeal it has been held "[i]t is the final judgment on a claim, not the ruling on a pleaded issue, that is appealable." Id. Also see *Lipton Realty v. St. Louis Housing Auth.*, 655 S.W.2d 792 (Mo.App.1983).

The plaintiff had judgment for the relief sought by its petition. "It has long been held that a party may not appeal from a judgment fully in his favor or giving him all the relief requested." *In Re Marriage of Richardson*, 540 S.W.2d 227, 228 (Mo. App.1976). Also see *Turner v. Anderson*, 236 Mo. 523, 139 S.W. 180 (1911). However, it is established a respondent may attack erroneous rulings of a trial court for the purpose of sustaining a judgment in its favor. *Senter v. Ferguson*, 486 S.W.2d 644 (Mo.App.1972). This principle has been applied to permit a respondent improperly granted relief under Count I to urge his right to relief under alternative Count II. *Cascio v. Garrett*, 535 S.W.2d 272 (Mo. App.1976). When it is necessary to do justice, this court may grant relief even to a non-appealing party. *MFA Cooperative Ass'n of Ash Grove v. Elliott*, 479 S.W.2d 129 (Mo.App.1972). Also see *Turner v. Anderson*, supra. Cf. *State ex inf. Nesslage v. Vil. of Flint Hill*, 718 S.W.2d 210 (Mo.App.1986).

"Unless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14. "Where the trial court reaches a correct result, even though pursuant to an erroneous reason, the decree must be affirmed." *Lancaster v. Simmons*, 621 S.W.2d 935, 942 (Mo.App.1981). This court is empowered to "give such judgment as the [trial] court ought to give." Rule 84.-14; *P.I.C. Leasing, Inc. v. Roy A. Scheperle Const. Co., Inc.*, 489 S.W.2d 219 (Mo. App.1972).

The judgment of the circuit court is modified to award the intervenor judgment against the appellant in the amount of $2,693.91 upon Count II of intervenor's petition and to dismiss Count I of that petition. As so modified, the judgment of the circuit court is affirmed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.

## ON MOTION FOR REHEARING

### PER CURIAM

By its motion the appellant seeks rehearing or transfer upon two bases. First it contends the effect of the opinion "is to state that if a vehicle (a truck in particular) does not have a Missouri title, then garagemens' liens will take priority over duly perfected security interests pursuant to the statutory garagemens' lien." Because of the false premise of "duly perfected security interests" that statement is patently without merit.

Second, it contends the opinion is in conflict with *In Re Brown*, 55 B.R. 172 (Bkrtcy.W.D.Mo.1985). It is not necessary to consider or approve the construction of § 301.600 expressed in that decision. It is sufficient to observe the decision assumes the existence of a security interest when the application for a certificate of title was prepared and filed.

In its suggestions the appellant says "[i]t appears to the Appellant that this Court may be of the opinion that since the title was issued prior to the date of that security agreement, that the perfection is not proper." That is the opinion of the court.

The appellant argues that under the Uniform Commercial Code, Secured Transactions, §§ 400.9–101 to 400.9–507, this conclusion is erroneous. It relies upon the fact a financing statement can serve to perfect a security interest created after that financing statement was filed. See *In Re Kielhafner*, 69 B.R. 51 (Bkrtcy.E.D.Mo. 1986). That result is in accord with the provisions of the Code. Section 400.9–302 in general provides that a financing statement must be filed to perfect a security interest. Section 400.9–402 provides: "A financing statement may be filed before a security agreement is made or a security interest otherwise attaches." Section 400.-9–303 provides: "A financing statement

must be filed to perfect all security interests except the following:"

However, the perfection of a security interest in a motor vehicle is not governed by those provisions. "When the Uniform Commercial Code was adopted by Missouri the legislature also passed § 301.600, which controls the method of perfecting liens and encumbrances on motor vehicles." *Ford Motor Credit Co. v. Pedersen*, 575 S.W.2d 916, 918 (Mo.App.1978). Sections 301.600 to 301.660 are drawn from the Uniform Motor Vehicle Certificate of Title Act.

The appellant has not shown where the motor vehicle was in 1984. However, assuming it was in Illinois, it is appropriate to observe Illinois has also enacted the Uniform Motor Vehicle Act. Ill.Rev.Stat. ch. 95½ par. 3–201 to 3–210 (1975). Those statutes are couched in substantially the same language as §§ 301.600 to 301.660. "Section 3–207 of the Illinois Vehicle Code (Ill.Rev.Stat.1975, ch. 95½, par. 3–207) provides the exclusive means for perfecting and giving notice of security interests in motor vehicles." *Huber Pontiac, Inc. v. Wells*, 59 Ill.App.3d 14, 16 Ill.Dec. 518, 375 N.E.2d 149 (1978).

The language of §§ 301.600 to 301.660 is premised upon the existence of *a lien* when it is perfected by complying with those sections. For example, a lien cannot attach until there is an effective security agreement. *Shelton v. Erwin*, 472 F.2d 1118 (8th Cir.1973). The subsection relied upon by appellant provides: "If the lien or encumbrance was perfected under the law of the jurisdiction where the motor vehicle or trailer was when the lien or encumbrance attached, the following rules apply:" That language obviously has reference to an existing lien, or a security agreement which has attached.

In the face of the explicit statutory commands, essential for the creation and perfecting of a security interest in a previously registered motor vehicle, reliance on statutory construction of concepts of the Uniform Commercial Code is misplaced. In the absence of a validly created security interest in the motor vehicle, the appellant's argument that its security interest in the truck 'relates back' to the time of its creation ... is not persuasive.

*In Re Covey*, 470 F.Supp. 1048, 1050 (D.C. Vt.1979).

Unlike the filed financing statement, the notice of lien filed with the Director of Revenue relating to a motor vehicle or trailer applies to a specific security agreement, the date of which must appear in the notice. Thus, if a security agreement has been satisfied and subsequent financing is effected with a separate security agreement, a new notice must be filed.

Mo. Creditors'-Debtors' Remedies, § 9.17 (Mo.Bar 4th ed. 1985).

In this case the security interest which is the basis of the action was not in existence in 1984. There is no evidence any lien on the motor vehicle could have attached in that year. The motion for rehearing or transfer is denied.

All concur.