**In re SARGENT WALNUT RANCHES, INC., Debtor.**

**U.S. BANK, N.A., Plaintiff,**

**v.**

**DESERET FARMS OF CALIFORNIA, INC., and Gary Farrar, Chapter 7 Trustee, Defendants.**

**DESERET FARMS OF CALIFORNIA, INC., Counter–Claimant,**

**v.**

**U.S. BANK, N.A., and Gary Farrar, Chapter 7 Trustee, Counter–Defendants.**

**Bankruptcy No. 97–94031–A–7. Adversary No. 97–9293.**

United States Bankruptcy Court, E.D. California, Modesto Division.

April 20, 1998.

---

Richard A. Rogan, Jeffer, Mangels, Butler & Marmaro, L.L.P., San Francisco, for Plaintiff and Counter–Defendant U.S. Bank, N.A.

William J. Thomas, Law Offices of William J. Thomas, Sacramento, CA, for Defendant and Counter–Claimant Deseret Farms of California, Inc.

## MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

This controversy requires the court to determine whether a producer's lien granted by section 55631 of the California Food & Agricultural Code encumbers not only a farm product but also proceeds from its sale. This question arises in a dispute between a bank and a walnut grower. The bank asserts a perfected security interest in an insolvent walnut processor's inventory and the proceeds from its sale. The grower holds a producer's lien on the processor's walnut inventory. The processor no longer has any walnut inventory. All that remains is cash generated by the sale of the grower's walnuts on which the bank and the processor assert conflicting claims.

The grower's producer's lien does not encumber the proceeds from the sale of the walnuts. The lien was dependent on the processor's possession of the walnuts. Once the walnut inventory was sold to third-party buyers, the grower lost its lien.

### I. Facts

Until at least August, 1996, Sargent Walnut was engaged in the business of processing walnuts, and was a "processor" within the meaning of California Food and Agricultural Code § 55407.

To finance its operations as a walnut processor, Sargent Walnut borrowed approximately $1,850,947.30 from U.S. Bank. This debt is secured by a perfected security interest in personal property of Sargent Walnut, including inventory, accounts receivable, and proceeds from the sale of inventory and the collection of accounts receivable. U.S. Bank's foreclosure of real property securing the loan guaranty of Charles and Nina Sargent, the shareholders of Sargent Walnut, has reduced the debt to approximately $1,000,000.00.

U.S. Bank's security interest in inventory, accounts receivable, and proceeds, was initially perfected on January 30, 1987, and was amended and restated on April 10, 1995.

Deseret is a "producer" of walnuts in California within the meaning of California Food and Agricultural Code § 55408.

On August 1, 1996, Deseret sold and shipped 86,572 pounds of partially processed walnuts to Sargent Walnut. Sargent Walnut further processed these walnuts and then sold them to third-party buyers.

On August 1, 1996, Deseret invoiced Sargent Walnut for 62,072 pounds of these walnuts. The amount of the invoice was $131,324.00. On September 30, 1996, Deseret invoiced Sargent Walnut for the remaining 24,500 pounds of walnuts. The amount of the second invoice was $57,960.00. Sargent Walnut has not paid Deseret any portion of these invoices.

On or about August 5, 1996, Deseret sold and delivered to Sargent Walnut 52,500 pounds of partially processed walnuts. Sargent Walnut further processed these walnuts and then sold them to third-party buyers.

On or about August 5, 1996, Deseret invoiced Sargent Walnut for the 52,500 pounds of walnuts. The amount of the invoice was $120,750.00. The invoice was not paid.

Sargent Walnut deposited the proceeds from the sale of the walnuts, $303,580.88, into an interest-bearing account at Wells Fargo Bank. These funds were not commingled with funds from any other source. While Sargent Walnut spent some of these funds prior to filing its August 27, 1997, bankruptcy petition, the account was turned over to the chapter 7 trustee largely intact. The trustee has deposited the remaining funds, $295,361.62 ("the proceeds"), into the court's registry.

Sargent Walnut has no remaining walnut inventory.

The issue presented is whether Deseret or U.S. Bank has a superior claim to the proceeds from the sale of the walnuts. The bankruptcy estate makes no claim to the proceeds.

## II. Discussion

### A.

It is undisputed that U.S. Bank holds a perfected security interest in Sargent Walnut's inventory, accounts receivable, and proceeds from inventory and accounts receivable. This security interest predates the sale of walnuts by Deseret to Sargent Walnut.

### B.

California has a statutory scheme that provides safeguards for the financial protection of producers who sell farm products to processors. The centerpiece of this protection is a statutory lien, found at Food & Agricultural Code § 55631, on all farm products in the possession of the processor. Section 55631 provides:

> Every producer of any farm product that sells any product which is grown by him to any processor under contract ... has a lien upon such product and upon all processed or manufactured forms of such farm product for his labor, care and expense in growing and harvesting such product.

Cal. Food & Agric. Code § 55631. This lien attaches not only to the farm products sold by the farmer to the processor, but to all like farm products in the possession of the processor. Cal. Food & Agric. Code § 55634. Farm products sold by one producer need not be segregated from farm products sold by another. The producer's lien attaches upon delivery to the entire farm product inventory of the processor. Cal. Food & Agric. Code § 55632.

Therefore, Deseret had a producer's lien on the entire walnut inventory of Sargent Walnut from the time that Sargent Walnut first took possession of the walnuts until they were sold by Sargent Walnut to third-party buyers.

### C.

A producer's lien on the farm products in the possession of a processor is superior to a prior perfected security interest in inventory consisting of farm products. Cal. Food & Agric. Code § 55633. Thus, Deseret's producer's lien on the walnuts in the possession of Sargent Walnut was superior to U.S. Bank's prior perfected security interest.

The problem, of course, is that Sargent Walnut has sold all of its walnut inventory.

### D.

This dispute turns on a single legal issue: Does a producer's lien shift from the farm products to the sale proceeds when the processor sells the farm products to a third party? It does not.

### 1.

The Food & Agricultural Code does not expressly provide for the attachment of the producer's lien to proceeds. *See* Cal. Food & Agric. § 55634. "It is unclear whether a producer's lien extends to proceeds of the product (e.g. cash or accounts receivable)." Ayer, John D., et al., *Secured Transactions in California Commercial Law Practice*, § 8.68, p. 446 (1986).

The California legislature obviously could have provided that a producer's lien attach to proceeds from the sale of farm products. Instead, the legislature sought to protect producers in other ways.

First, the Food & Agricultural Code provides that a producer's lien attaches not only to the farm products sold by that producer, it also attaches to the processor's entire farm product inventory. Section 55634 provides:

> Every lien which is provided for in this article is on every farm product and any processed form of the farm product which is in the possession of the processor without segregation of such product.

Cal. Food & Agric. Code § 55634. Furthermore, if the farm product in inventory is insufficient to secure the claims of all producers, all producer claims have equal standing and payment is to be prorated if necessary among the claimants. Cal. Food & Agric. Code § 55645.

Second, in the event the producer is not paid, it may file suit to foreclose its producer's lien. Cal. Food & Agric. §§ 55636 & 55652. Pending adjudication of such a suit, the producer may obtain an injunction against the processor to restrain "any acts on the part of such processor which are designed to or which would, in effect, remove any processed product in his possession or under his control and upon which valid liens exist, beyond the process of the court, to plaintiff's injury." Cal. Food & Agric. § 55651.

There is evidence in the record that Deseret knew Sargent Walnut was liquidating its walnut inventory even though it had not paid Deseret. In its answer to a state court complaint filed prior to the bankruptcy case, Deseret alleged:

> The inventory sales continued even after payments were due and demands were made for payment, demand was made for the return of any remaining inventory, and Deseret asserted its lien claim.

Answer to Complaint in Interpleader, Case No. 112110, Superior Court of California, County of Stanislaus, ¶ 6.b, p. 11. Deseret nonetheless failed to avail itself of its right to foreclose on the remaining walnuts or its right to enjoin further transfers by Sargent Walnut.

Third, to deter the processor from transferring processed farm product without paying the producer, the Food & Agricultural Code mandates civil and criminal penalties. Cal. Food & Agric. Code §§ 55872–55922.

Fourth, the Food & Agricultural Code establishes a Farm Products Trust Fund. Cal. Food & Agric. Code § 56701. The "money deposited in the products fund shall only be used to pay for farm products grown or produced within this state, which have not been otherwise paid for ...." Cal. Food & Agric. Code § 56704. The producer may receive up to 50% of its claim, with a limit of $50,000.00 per year to be paid on claims against any one licensed processor. Cal. Food & Agric. Code § 56708.

The producer's lien law, while providing a variety of rights and remedies, includes no express provision granting a producer's lien on the proceeds from the sale of farm products.

### 2.

The purpose of the Food & Agricultural Code is to promote and protect the agricultural industry of California and to protect the public health, safety, and welfare. Cal. Food & Agric. Code § 3. The provisions of the Food & Agricultural Code are to be liberally construed for the accomplishment of those purposes. *Id.* The producer's lien law serves these purposes by protecting the financial viability of farmers and growers.

Deseret argues such protection requires that a producer's lien reach not only farm products, but also proceeds from their sale. It asks the court to liberally construe the statute by implying this protection despite the absence of an express grant of a lien on proceeds.

 It is one thing to construe a statute liberally. It is another to legislate from the bench. The question is not whether a rule providing for the attachment of the producer's lien to proceeds would foster the purpose of the statute, but whether the legislature incorporated such a rule into its statutory scheme.

A comparison of the producer's lien to the statutory lien given to suppliers of livestock to meatpackers (the "livestock lien") makes it abundantly clear that the California legislature knew how to extend a statutory lien to proceeds from the sale of farm products. Cal. Food & Agric. Code §§ 55701—55704. The livestock lien law was enacted in 1979, the same year the producer's lien law was amended to its current form. Cal. Stats. 1979, Chapter 497 [livestock lien law]; Cal. Stats.1979, Chapter 969 [amended producer's lien law]. Section 55702 provides:

> [A]ny person who sells or furnishes livestock to a meatpacker, shall have a lien, *not dependent upon possession, on such livestock and upon the identifiable proceeds and products thereof,* for the unpaid part of the purchase price ... The lien shall commence on the date of the transfer of possession of the livestock to the meatpacker *and shall have priority over all other liens upon, and security interests in, the livestock and the identifiable proceeds and products thereof,* without regard to the time of attachment or perfection of such other liens or security interests *and shall remain a lien upon the livestock and the identifiable proceeds and products thereof notwithstanding sale, exchange, or other disposition thereof.*

Cal. Food & Agric. Code § 55702 [emphasis added].

Similar language does not appear anywhere in section 55631, section 55634, or elsewhere in the producer's lien law. Cal. Food & Agric. Code §§ 55631, 55634. To the contrary, section 55634 makes the producer's lien dependent on the processor's possession of the farm product. Deseret nonetheless would have the court strike this restrictive language from section 55634 and add more expansive language similar to that in section 55702.

Were the court to do so, it would go far beyond what the legislature provided, not only in the producer's lien law, but in the livestock lien law as well. Because the producer's lien encumbers all farm product in the possession of the processor and not just the product sold by each producer, the construction urged by Deseret would give a producer a lien on the product it sold to the processor, the product sold by all other producers, and the proceeds from the sale of all product. By contrast, the livestock lien, which expressly provides a lien on proceeds, encumbers only the livestock sold by the particular seller and the proceeds from the sale of that livestock.[1]

The court will not "imply" a lien on proceeds or any other right or remedy not provided by the statute.

3.

Deseret nevertheless argues that the court must hold that the producer's lien transfers to sale proceeds. It bases its argument on section 55638 of the Food & Agricultural Code which provides:

> "It is unlawful for any processor to remove ... beyond his ownership or control, any farm product which is delivered to him ... to which any of the liens provided for in this chapter has attached, unless [the liens are oversecured]. Furthermore, this section shall not prohibit the sale of any farm product or processed form of the product to which such a lien has attached, so long as the total proceeds of the sale are used to satisfy obligations to producers which

---

**1.** However, if there are several livestock liens and the sale proceeds are insufficient to satisfy all liens, the proceeds must be divided pro rata among the livestock suppliers regardless of the order in which the liens were created or the date foreclosure actions were commenced. Cal. Food & Agricultural Code § 55703.

are secured by a lien established pursuant to this chapter."

Cal. Food & Agric. Code § 55638. It is a misdemeanor for a licensed processor to fail to comply with this provision. Cal. Food & Agric. §§ 55878, 55879, & 55901.

Deseret extrapolates from section 55638 "an absolute interest of the producer in [the] lien-protected inventory," and it further argues that a holding in favor of U.S. Bank "would make the sale of [the] lien-protected inventory *without payment to the grower* illegal." Deseret's Trial Brief filed February 27, 1997, at p. 3–4 [emphasis in original].

Deseret cites *Valley Farm Management, Inc., v. Andrew (In re Loretto Winery Limited)*, 898 F.2d 715, 722 (9th Cir.1990) as support for its position. In *Loretto*, processed farm product inventory was sold but was still in the possession of the processor. The chapter 7 trustee for the processor's bankruptcy estate attempted to avoid the producer's lien on the inventory, arguing that the lien was unenforceable against a bona fide purchaser for value and was therefore avoidable pursuant to 11 U.S.C. § 545.

The Ninth Circuit concluded, however, that a producer's lien is good against a bona fide purchaser *without possession* when the proceeds are not used to satisfy the lien. *Id.* at 724. The court reasoned that a hypothetical contract to purchase the product for value would be void as an illegal contract if the processor did not satisfy the obligation secured by the producer's lien. "[C]ontracts for the sale of the product subject to the [producer's] lien are void when the processor does not use the proceeds to pay off the lien." *Id.* at 723. Because the contract would be void if the processor did not pay the producer, there could be no bona fide purchaser for value. Therefore, the processor's chapter 7 trustee lost his bid under section 545 to avoid the producer's lien.

This case is a very different case. In *Loretto*, the farm products were still in pos-session of the processor on the relevant date, the date of petition. In this case, the walnuts are in the possession of the purchasers. The distinction is critical. As the *Loretto* court stated:

Congress has determined that state law should determine the property interests underlying bankruptcy disputes; and under California state law, *the lien lives or dies based on possession.*

*Id.* at 721 [emphasis added].[2]

Deseret brushes off this clear refutation of its position by relying on the *Loretto* court's general statement that illegal contracts are void. *Id.* at 723.

This statement does not help Deseret. For one thing, Deseret has not requested that Sargent Walnut's contracts with the third-party buyers be declared void and rescinded. If such relief were sought, the court could not grant it because the third-party buyers of the walnuts are not parties to this proceeding.

Even if the third-party buyers were parties, avoidance of their contracts would be a remote probability. Unlike *Loretto*, the contracts with the third-party buyers are no longer executory. Possession of the walnuts has been given to the buyers and the buyers have paid Sargent Walnut. It is unknown if the walnuts are still in the possession of the buyers.

The court in *Loretto* recognized that in such a situation, it was inappropriate to void a contract between a processor and a buyer. The *Loretto* court held that declaring a completed contract for the sale of farm product void would result in the processor, the party most at fault, being unjustly enriched at the buyer's expense. *Id.* at 723, citing *Norwood v. Judd*, 93 Cal.App.2d .276, 209 P.2d 24 (1949)

This holding is consistent with Commercial Code § 2403 which recognizes that a bona fide purchaser value acquires good title from

---

**2.** *Alvernaz Farms, Inc. v. Bank of California (In re T.H. Richards)*, 910 F.2d 639 (9th Cir.1990), is consistent with this holding. In *T.H. Richards*, the bank argued, among other things, that farmers had lost their producer's liens when they allowed their farm products to be transferred to a field warehouseman. Ninth Circuit rejected the bank's arguments. The court held that while possession of the farm product by the processor was critical, the transfer to a field warehouseman did not constitute a transfer of possession. *Id.* at 649.

a seller even though the seller violates the law. Cal. Comm.Code § 2403(1).[3] *Cf. Morgold, Inc. v. Keeler,* 891 F.Supp. 1361, 1367–1368 (1995).

### 4.

Liens predicated on possession are not uncommon under California law. For example, section 3041 of the Civil Code provides a lien, dependent upon possession, to secure compensation owed to those who perform services on an article of personal property at the request of its owner. Cal. Civil Code § 3041. If possession is given up, the service provider loses the lien. *See e.g., Kirkman Corp. v. Owens,* 62 Cal.App.2d 193, 199, 144 P.2d 405 (1944); *Jess H. Young & Son, Inc. v. Victory Tool & Die Co.,* 189 Cal.App.2d 824, 827–828, 11 Cal.Rptr. 516 (1961).

Other possessory liens differ from the producer's lien in one respect. Most other possessory liens are only effective if the secured party possesses the burdened property, while a producer's lien is only effective if the debtor to the transaction, the processor, possesses the burdened property.

This distinction is not important. The important point is, as stated by the *Loretto* court, the lien in each case "lives or dies based on possession."

### E.

Deseret could have easily acquired the protection it now seeks to conjure out of the Food & Agricultural Code. Rather than rely on its producer's lien, it could have preempted any problem by taking back a purchase money security interest in its walnuts at the time of their sales to Sargent Walnut. Cal. Comm.Code § 9312(3). A financier of property who complies with section 9312(3) of the Commercial Code will prime a prior floating lien.

### III. Conclusion

U.S. Bank has a perfected security interest in the proceeds from the sale of the walnuts. The Food & Agricultural Code does not provide for the continuation of a producer's lien in the proceeds generated by the sale of farm product by a processor. Consequently, Des-

eret's producer's lien was extinguished when Sargent Walnut sold the last of its walnut inventory to third parties.

The proceeds are the collateral of U.S. Bank and the Clerk of the Court shall pay the proceeds over to U.S. Bank eleven days after entry of a judgment on this matter.

An appropriate judgment shall be entered.

---

3. Commercial Code § 2403(1) provides in part: "A person with voidable title has power to transfer a good title to a good faith purchaser for value."